ANNA MOORE *v.* AMERICAN STORES COMPANY.
[No. 65, October Term, 1935.]

542

*Decided January 15th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, SHEHAN, and JOHNSON, JJ.

*Leonard Weinberg* and *Howard A. Sweeten,* for the appellant.

*Walter L. Clark,* with whom was *Clater W. Smith* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This appeal is from the judgment entered on a directed verdict for the defendant in the Superior Court of Baltimore City in an action brought by Anna Moore against the American Stores Company, a corporation, to recover compensation for injuries which she is said to have sustained as the result of a fall alleged to have occurred

while she was in defendant's store as a patron, which, she charged, was caused by defendant's negligence in permitting that part of the floor on which she fell to be in a greasy and unsafe condition.

There was in the case evidence tending to prove these facts: Anna Moore, at the time of the accident, was about fifty years old; she lived with her two sisters on North Caroline street in Baltimore, Maryland. On Wednesday, August 30th, 1933, at the request of one of the sisters, she went to the defendant's store at Federal and Bond streets in Baltimore to make some purchases. That store had two entrances, one on Bond Street, the other on Federal Street. To the left of one entering the Federal Street entrance there is a "fish trough," beyond that and on the same side a "meat block," and further on "in the rear of the store is a refrigerator in which meats are kept, on the other side of the store is a grocery counter."

Miss Moore, upon entering the store, made some purchases at the meat counter, she then went to the grocery counter, and then started to return to the Federal Street entrance. On her way out, as she passed the meat counter, her two feet went from under her, and she "sat right down," and her hands "went on the floor" as she tried to catch herself. She was unable to get up, but was helped to her feet and placed on a lard can near the door where she could get some air. When she got up, she noticed dirty grimy grease on her hands, and that the floor where she fell was dark and "more greasy than the rest of the floor." The rest of the floor was dark, but not as dark and greasy as where she fell. When she fell, she skidded towards the door, and there were on the floor two marks, lighter than the rest of the floor, where "the heel of the foot slid right across the floor." She was taken to her home, and her sister, who attended her there, noticed grease on the back of her dress and grease on her hands, dirty, black, grimy grease, and there was on the sole of one of her shoes a piece of some kind of grease which looked liked bacon, which had been walked on. The skid marks were from a foot to two feet in length, in

front of the meat block, and were lighter than the rest of the floor. There was also evidence tending to prove that as a result of the fall Miss Moore suffered severe, painful, and permanent injuries.

Upon that evidence, the court granted two prayers; one, the usual demurrer prayer, the other, that "the testimony produced by the plaintiff is equally consistent with either of two theories, that she fell because the floor was slippery from grease, or that she fell because she had a piece of bacon on her shoe causing her to slip; that as to one of these causes there is no evidence legally sufficient to show negligence or want of care on the part of the defendant; that as the plaintiff has failed to meet the burden of showing that a cause for which the defendant is legally responsible produced the injury to the plaintiff, the verdict of the jury must be for the defendant."

The questions presented by the appeal are: (1) whether the evidence summarized above was legally sufficient to support a conclusion that the accident of which the appellant complains was caused by the appellee's negligence, and (2), assuming that it established facts which would inculpate the appellee, did it also establish other facts which would exculpate it, without pointing out definitely and certainly whether the accident was caused by the one set of facts or the other?

The proposition involved in the first question definitely lacks reality. Assuming the truth of the appellant's evidence, together with all inferences which may legitimately be drawn therefrom which tend to support her claim, and so much was conceded by the demurrer prayer, three inferences may rationally be drawn: (1) That the floor was greasy; (2) that because of that condition it was slippery and unsafe; and (3) that as a result of its slippery and unsafe condition the appellant fell and was injured.

Assuming, for the question only, that the floor was greasy, slippery, and unsafe, and that appellant's injuries resulted from that condition, the controlling question is,

Were those facts legally sufficient to show that her injuries were caused by appellee's negligence?

The appellee maintained a general grocery and provision store which it invited the public to attend and patronize, for their convenience and its profit. It was under a plain duty to exercise reasonable care to maintain its premises in such a condition that persons accepting its invitation would not be subjected to any risk or danger arising from the physical state of its property, except such as was naturally and ordinarily incident to the nature of its business. *A. L. Inst., Restatement of Law of Torts,* sec. 343; *Benesch & Sons v. Ferkler,* 153 Md. 680, 683, 139 A. 557; *Dickey v. Hochschild, Kohn & Co.,* 157 Md. 448, 450, 146 A. 282; *Grzboski v. Bernheimer-Leader Stores,* 156 Md. 146, 148, 143 A. 706. It has been said (33 *A.L.R.* 186) that one "who invites the public on his premises to inspect and purchase goods is held to a higher or greater degree of care and diligence than otherwise," but that statement of the law is not entirely accurate. The inviter, under such circumstances, is under no duty to exercise any higher or greater or different degree of care than any other inviter would be, but, to discharge the duty imposed upon him of exercising ordinary care for the safety of business visitors to his premises, he may be required to take different measures or precautions than would one who invited others to his private residence for purposes of social intercourse or even business. *Am. L. Inst., Restatement of Law of Torts,* sec 343, comment e. "Ordinary care" is also a relative term, the meaning of which varies with the nature and character of the object to which it is applied (*Merrifield v. C. Hoffberger* Co., 147 Md. 141, 127 A. 500), and conduct which under one set of circumstances would constitute ordinary care might under others be wholly insufficient to gratify the demands of that term. *Dickey v. Hochschild, Kohn & Co,* 157 Md. 448, 451, 146 A. 282, 283. Just as the measures taken by the bailee of a quantity of scrap iron to protect it from theft, while sufficient to constitute ordinary care for that

purpose, might be wholly insufficient to constitute ordinary care if taken for the protection of gold or bearer bonds or jewelry. That distinction is clearly and accurately shown in the Restatement, in the following language used in *A. L. Inst., Restatement of Law of Torts,* sec. 343, comment e, p. 943: "One who enters a private residence even for purposes connected with the owner's business, is entitled to expect only such preparation as a reasonably prudent householder makes for the reception of such visitors. On the other hand, one entering a store, theatre, office building or hotel, is entitled to expect that his host will make far greater preparation to secure the safety of his patrons than a householder will make for his social or even his business visitors."

Applying those principles, which appear to be quite well settled and generally accepted, to the facts of this case, it cannot be said as a matter of law that the evidence permitted no rational inference that appellant's fall was caused by the appellee's negligence. That evidence is quite clear that the floor on which the appellant slipped and fell was dark, and that its condition was not apparent to one using the facilities of the store in an ordinary way. That part of it on which appellant fell was adjacent to the meat counter, and was greasy and slippery, so slippery that defendant's feet went from under her, she slid or skidded on it, and the heels of her shoes left distinct skidmarks lighter in color than the rest of the floor. It cannot be assumed that, if appellee knowingly permitted its floor to be in a greasy and unsafe condition, it had fully discharged its duty to exercise ordinary care for the protection of persons whom it had invited to its store. Appellee's reply to that conclusion is (1) the fact that the floor was greasy is no evidence of negligence, and (2) that the fact that the floor was "greasy looking" merely created the inference that at some indefinite time in the past it had been oiled. The answer to the second criticism is that there was no evidence of any kind that the floor had ever been oiled. It may have been oiled, waxed, painted, greased, of dark

wood, or merely dirty, so that no inference that it had been oiled is compelled by the fact that it was dark or by evidence that it was greasy. The other criticism, that the fact that the floor was greasy "does not prove negligence," is true only to this extent, that while in itself it may or may not have proved negligence, it was certainly evidence of negligence, and, if shown to have existed under circumstances charging the appellee with notice of the condition, it was proof of negligence.

The facts of this case are sufficient to impute to the appellee constructive knowledge of the greasy condition of the floor. Consideration of that question involves the question put by appellee's C prayer, and the two questions will be considered together. The evidence showed that, when the appellant reached her home after the accident, a dark greasy substance, which may have been a piece of bacon, was found on the sole of one of her shoes. From that circumstance appellee suggests that, since that may have caused the accident, and not the greasy condition of the floor, it is not liable because, conceding that it would be liable for harm caused by a general greasy condition of the floor, it would not be liable for harm caused by a piece of bacon or other greasy substance which may have been dropped by a customer or a stranger, and of which it had neither actual nor constructive notice, and that, as the evidence failed to show whether the accident was due to one cause or the other, under the line of cases beginning with *Harford County v. Wise*, 75 Md. 38, 23 A. 65, and continuing through *Wilson & Son v. Blaustein*, 144 Md. 289, 292, 124 A. 886, the appellant failed to meet the burden resting upon her to show that her injuries were caused by appellee's negligence.

But in that contention a rule of law is confused with an issue of fact. There is evidence, apart from the grease found on appellant's shoe, that the floor was greasy, that both of her feet "went from under her," and that there was grease on her hands and on her dress which were on the floor, and that the floor looked greasy. The

greasy condition of the floor may undoubtedly have been caused by just such pieces of grease or bacon as that found on appellant's shoe, and it tended for that reason to corroborate her statement that the floor was greasy. It may also have been inferred that such pieces of grease fell from the meat block or the counter which were immediately adjacent to the place where she fell. The fact that her hands where they rested on the floor were greasy tended to show that there was more grease on the floor than that found on her shoe, for in falling her hands could not well have come in contact with the sole of one shoe, especially as her feet slid in the direction she was going, and in falling she sat down.

It is also suggested that the grease found on her dress may have come from the lard can. That is a possible, but not a necessary inference. There was no evidence that the outside of the lard can was greasy, and, since ordinarily lard is found inside such containers and not on the outside of them, the inference that the grease on her dress came from the floor and not from the can was at least permissible.

The rule stated in *Harford County v. Wise, supra*, is a rule of evidence. The burden is upon the plaintiff, in an action for damages for injuries alleged to have been caused by defendant's negligence, to prove affirmatively the negligence alleged and that it caused the injury. *Benedick v. Potts*, 88 Md. 52, 54, 40 A. 1067. That burden is not met by proof furnished by the plaintiff that defendant's negligence may have caused the injuries, or even that it probably did cause them, if it also appears, from the same source, that the injuries may have been produced by some other cause for which he was not responsible. *Harford County v. Wise, supra; Strasburger v. Vogel*, 103 Md. 85, 91, 63 A. 202, 204; *Darby Candy Co. v. Hoffberger*, 111 Md. 84, 88, 73 A. 565; *Hanrahan v. Baltimore*, 114 Md. 517, 535, 80 A. 312; *Wilson & Son v. Blaustein, supra;* 45 C.J. 1266. Or, as stated in *Strasburger v. Vogel, supra*, "when the plaintiff himself shows that the injury complained of must have resulted either

from the negligence of the defendant or from an independent cause for the existence of which the defendant is in no way responsible, he cannot be permitted to recover until he excludes the independent cause as the efficient and proximate cause of the injury." But, where the fact upon which the defendant relies as exculpatory itself furnishes evidence of some wrongful act or omission on his part which caused the injury complained of, as in *Grzboski v. Bernheimer-Leader Stores, supra,* where the presence of a piece of orange peel in a pile of litter which had been swept together furnished evidence of defendant's knowledge of its presence, the rule has no application. For the same reason it has no application to the facts of this case. For the fact that a greasy substance, or a piece of bacon, that was "dark looking, as if it had been walked on," was found on appellant's shoe, supplied an explanation for the greasy condition of the floor where the appellant fell. The proximity of the meat counter, the fact that the floor was greasy, and that that particular substance was probably on the floor, permitted an inference, not wholly unreasonable, that the greasy condition of the floor was caused by the careless dropping of similar greasy substances on the floor by appellee's employees at the meat counter.

Because of the nature of its business, the appellee was bound to anticipate that persons would from time to time visit its store to purchase the different articles offered for sale, that while there their attention would naturally be given in part to inspecting goods displayed for the very purpose of attracting their attention, that they would vary in age, in activity, in the keenness of their physical faculties, and that they would be unlikely, because of the presence of others in the store room, and of the nature of their business there, to give the same care and attention to the condition of the premises as they would to their surroundings under other circumstances. It was therefore under a duty to exercise reasonable and ordinary care to see that its premises were in such a condition that its customers might safely use

them while visiting the store upon its invitation to buy its wares. *Dickey v. Hochschild, Kohn & Co., supra,* and cases cited *supra.* In the performance of that duty it was required to exercise reasonable care to discover conditions which, if known to it, it should have realized involved an unreasonable risk to such patrons. *Restatement of Law of Torts,* sec. 348 (a). Any breach of that duty resulting in injury to one lawfully on its premises as an invitee would constitute negligence, if, but only if, it knew, or by the exercise of reasonable care could have discovered, the conditions which created the peril, and had no reason to believe that its invitees would realize the risk involved therein. *Restatement of Law of Torts,* sec. 343; 45 *C.J.* 651, *Negligence,* sec. 25 and notes. It is not necessary that there be proof that the inviter had actual knowledge of the conditions creating the peril; it is enough if it appear that it could have discovered them by the exercise of ordinary care (45 *C.J.* 653 *et seq.*), so that, if it is shown that the conditions have existed for a time sufficient to permit one, under a duty to know of them, to discover them, had he exercised reasonable care, his failure to discover them may in itself be evidence of negligence sufficient to charge him with knowledge of them. *Id.* What will amount to sufficient time depends upon the circumstances of the particular case, and involves consideration of the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions. So in *Benesch & Sons v. Ferkler,* 153 Md. 680, 682, 139 A. 557, the defendant was charged with notice of the condition of a floor that had been "freshly oiled"; in *Hudson v. F. W. Woolworth Co.,* 275 Mass. 469, 176 N.E. 188, 189, defendant was charged with notice of a piece of candy on the floor of its store, where there was "something on which to base a conclusion that the candy had not been dropped a

moment before by a customer"; in *Dickey v. Hochschild, Kohn & Co.,* 157 Md. 448, 452, 146 A. 282, defendant was charged with notice of the defective condition of an iron strap on a step of a stairway; in *Langley v. F. W. Woolworth Co.,* 47 R.I. 165, 131 A. 194, defendant was charged with notice of the presence of a bag of peanuts which had remained on its floor for an hour and ten minutes; in *Keen v. Havre de Grace,* 93 Md. 34, 48 A. 444, the fact that a hole in the sidewalk had been visible for two or three weeks was held sufficient; and in *Annapolis v. Stallings,* 125 Md. 343, 347, 93 A. 974, it was held that notice of a defect in a sidewalk would be imputed to the municipality where there was "full opportunity for" the municipality to know of it. In all of these cases the conclusions reached were consistent with the hypothesis that the dangerous condition was created by some act or default on the part of the defendant or its agent, or was in some way incidental to the operation of its business. On the other hand, in *Maryland State Fair v. Henderson,* 164 Md. 587, 592, 165 A. 698, it was held that, where the dangerous condition was created by an independent agency, the fact that it had existed for a few hours only was not sufficient to charge the defendant with notice.

Turning again to the facts of this case, for reasons already stated, it is not necessary to determine whether the presence of a single piece of bacon or other greasy substance on appellee's store floor would have been sufficient evidence of its negligence, for the evidence permitted the inference that the accident resulted from the general condition of the floor to which that particular substance was merely a contributing cause. That general condition was of such a character that appellee should have anticipated from the nature of its business that injuries might result from it unless measures were taken to correct it; it could have been readily discovered by one exercising ordinary diligence; and from its nature it must have existed for a time sufficient to permit the inference that, if appellee exercised ordinary care, it must have known of it.

It follows, therefore, that the appellee's A and C prayers should have been refused.

The only other exception presented is to the refusal of the court to permit the appellant to prove that several weeks before the accident a child fell at the same place, and the floor there at that time was "dark and greasy." The court overruled the offer as made, but announced that the evidence indicated by it would be admitted if accompanied by proof that the condition to which it referred had continued unchanged from the fall of the child to appellant's accident. That ruling was undoubtedly correct. If the purpose of the evidence offered was to show that appellee had had time to discover the condition of the floor at the time Miss Moore fell, it would have been meaningless unless the condition of the floor when the child fell was the same as when Miss Moore fell, and between those two events it remained unchanged. If its purpose was merely to show that on some other occasion the appellee had been negligent, it was collateral and inadmissible. 45 *C.J.* 1238. In *Maryland, D. & V. Ry. Co. v. Brown,* 109 Md. 304, 71 A. 1005, it was held that evidence that a structural defect in an engine existed several weeks prior to an accident said to have been caused by such defect was, in the discretion of the trial court, admissible to show its condition at the time of the accident, but the defect was structural in its nature, and would necessarily continue unchanged until corrected by repair or replacement, while here the condition which caused the accident was not due to any structural defects in appellee's premises, but to a want of care in failing to keep the floor adjacent to the meat counter free from greasy substances. That condition might naturally change from day to day, disappear and recur, as appellee's employees were careful or negligent in the performance of their duties, so that evidence that the floor was dirty or greasy at one time would be no evidence that it was in the same condition at another time, unless the two periods were so

closely connected as to justify a reasonable inference that the condition had not changed, which is not the case here.

For the error in granting defendant's A and C prayers, the judgment appealed from must be reversed, and the case remanded for a new trial.

*Judgment reversed, and case remanded for a new trial, with costs to the appellant.*