# LAURA DUNCAN BURKOWSKE *v.* CHURCH HOSPITAL CORPORATION

[No. 512, September Term, 1981.]

*Decided January 11, 1982.*

The cause was argued before MOORE, WILNER and COUCH, JJ.

*Donald F. Chiarello* for appellant.

*Robert Earl Wilson,* with whom were *William J. Kobokovich, Jr.,* and *Huber, Lutche & Wilson* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

In the early afternoon of June 28, 1977, appellant and her mother went to the appellee hospital to visit a patient. As visiting hours had not yet commenced, they repaired to the waiting room where there were located several benches supplied by the hospital for its visitors. The mother, a large woman weighing about 350 pounds, sat on one of the benches without incident. Appellant purchased some soda and then joined her mother. As she sat down on the other end of the bench, it suddenly collapsed, causing her to fall and injure herself. Several hospital employees assisted her in walking to the emergency room, where she was examined and treated.

As a result of this unfortunate occurrence, appellant filed suit against the hospital claiming that it was negligent in permitting her to sit on a bench that it knew or should have known was in a defective and dangerous condition. In particular, she alleged that the hospital failed to use reasonable care to inspect or test the bench when a reasonable inspection or test would have revealed the defective and dangerous condition.

In appellee's answers to interrogatories, it was averred that the bench in question had been purchased by the hospital from State Use Industries in 1973, that the hospital

had no record of any defect in the bench prior to the incident complained of, and that during routine housekeeping operations chairs and benches are cleaned "and any defect appearing is reported and the equipment is withdrawn from service for repair." The bench in question had been discarded by the hospital on the day of the accident after the maintenance staff concluded that it could not be repaired, and thus it was not available as evidence.

In her answers to appellee's interrogatories, appellant disclaimed any knowledge as to why the bench collapsed but repeated her charge that the maintenance of a bench "in such condition" constitutes negligence. In response to Interrogatory No. 6, which asked for the name and address of any person having personal knowledge of facts material to the circumstances concerning the accident and its happening, she replied that she knew of no such persons. Her reply to Interrogatory No. 24, which asked: "If you contend this Defendant knew or should have known that the bench which is the subject matter of this litigation was defective prior to the occurrence, state in detail all facts upon which you will rely to support such a contention," was: "A reasonable program of inspection and maintenance would have disclosed the defect."

On that state of the record, with no clear assertion by appellant under oath that appellee had actual knowledge that the bench was defective and with no proffer of evidence showing such knowledge, appellee moved for summary judgment. Before that motion, which was never answered, could be heard, appellant filed rather extensive supplemental answers to appellee's interrogatories. Most of the new answers related to her injuries and damages; however:

(1) supplementing her answer to Interrogatory No. 6, she averred that "[a]n unidentified male Emergency Room Orderly employed by [appellee] who is described to be in his mid 30's, medium height and build with dark complexion and mustache has personal knowledge of facts material to the circumstances concerning the accident and its happening"; and

(2) supplementing her answer to Interrogatory No. 24, she claimed:

> "In addition to the failure of the Defendant to have a reasonable program of inspection and maintenance which would have disclosed the defect, the Defendant, in fact, did not inspect nor maintain the benches in question and was aware of the fact that the bench or benches were rotten and defective. The Defendant's knowledge of that fact is based upon the statement made by the unidentified Emergency Room Orderly mentioned in Answer to Interrogatory No. 6 who stated to the Plaintiff and her mother in the Emergency Room that 'every one of those damn benches are rotten and should have been taken out of here long ago. You should sue them.'"

As a result of these new answers, the trial date, which already had been scheduled, was postponed, and the motion was referred to the judge assigned to try the case. On the morning of trial, appellant having failed to produce the unidentified orderly, appellee filed a motion *in limine* to preclude appellant from testifying as to the statement allegedly made by that orderly on the ground that it would be inadmissible hearsay.

The court (1) granted the motion *in limine* and thus excluded from consideration the statement allegedly made by the unknown orderly; (2) assumed for purposes of the motion for summary judgment that appellee discarded the bench "because some inspection might be detrimental to this claim"; and (3) took into account deposition testimony of appellant's mother that the wood on an adjoining bench in the same waiting room area was "splintered and cracked," but concluded that the condition of another bench was not evidence of the condition of the bench in question. With this, and rejecting *res ipsa loquitur* as a basis of liability, the court concluded that there was no evidence of appellee's liability in the matter, and thus granted the motion for summary judgment.

From the adverse judgment, appellant has taken this appeal, complaining about the rulings on both the motion *in limine* and the motion for summary judgment. We find no error, and shall therefore affirm.

## (1) *Motion In Limine*

The subject of the motion *in limine* was the expected testimony of appellant that an unidentified person believed by her to be an emergency room orderly told her that "every one of those damn benches are rotten and should have been taken out of here long ago. You should sue them." Appellant concedes, as she must, that such testimony is classic hearsay — a statement made by an out-of-court declarant, not subject to cross-examination, offered for its truth. She insists, however, that as the declarant was (ostensibly) an employee/agent of appellee, his statement is admissible as an "admission" of a party.

We are dealing here with two quite different, but in this case complementary, principles, both well established in the law; first, that oral admissions or declarations by a party that are against his interest are admissible in evidence even if they amount to hearsay; and second, that where an agency relationship is shown to exist, the admissions of an agent made within the scope of his agency or employment and which relate to an act he is authorized to perform are admissible against his principal.

It is the second principle that is primarily at issue. Appellee does not suggest that the statement allegedly made by the orderly is not against its interest; the question is whether that statement is attributable or imputable to appellee so as to constitute an admission by *it,* who is the party in interest.

One of the clearest expressions of this second principle (and its limitations) was given by the Court of Appeals back in 1826, in the case of *City Bank of Baltimore v. Bateman,* 7 H. & J. 104, 108. The Court there held:

"Admissions or declarations by third persons, are

in general inadmissible; but the relation of principal and agent excludes the application of this rule; and it is a general principle, that where an agency is sufficiently established, the acts and declarations of the agent, within the scope of his authority, are to be considered as the acts and declarations of the principal, of which evidence may be given, as if they had been actually done and made by the principal himself. *But an agent cannot bind the principal beyond the scope of the authority delegated to him;* and where he makes any declarations or representations of his own authority, such declarations or representations cannot be received in evidence to charge the principal, but the agent must himself be called to prove any thing he may know in relation to the subject of such declarations or representations." (Emphasis supplied.)

In subsequent cases, the Court made clear that, in order to bind the principal (and thus constitute an admission by *it*), the agent's statement not only must concern matters within the scope of his own agency authority but must also be part of the *res gestae, i.e.,* made contemporaneously with the transaction to which it relates. *See, for example, Franklin Bank of Baltimore v. The Pennsylvania, Delaware and Maryland Steam Navigation Co.,* 11 G. & J. 28 (1839); *Bradford v. Williams,* 2 Md.Ch. 1 (1849); *Dietrich v. The Baltimore & Hall's Springs Railway Co.,* 58 Md. 347 (1882); *Mayor & City Council of Baltimore v. Lobe,* 90 Md. 310 (1900); *Noel Construction Co. v. Armored Concrete Construction Co.,* 120 Md. 237 (1913); *Dulany v. Fidelity & Casualty Co.,* 106 Md. 17 (1907); *Loving v. Mutual Life Insurance Co.,* 140 Md. 173 (1922); *Pinkerton v. Slocomb,* 126 Md. 665 (1915); *Montgomery Bus Lines, Inc. v. Diehl,* 158 Md. 233 (1930); *Singer Transfer Co., Inc. v. Buck Glass Co.,* 169 Md. 358 (1935). *Compare Keene v. Arlan's Department Store,* 35 Md.App. 250 (1977), in particular footnote 2 at p. 257; *and see Greenstein v. Meister,* 279 Md. 275 (1977).

These two requirements coalesced in *Grzboski v.*

*Bernheimer-Leader Stores,* 156 Md. 146 (1928), a case close in point. The plaintiff there was a customer in the defendant's store; while walking through the store, she slipped on an orange peel in a small pile of rubbish located in the aisle. At issue was whether she could testify as to remarks made to her by a saleslady in the store after the accident as to how the pile of dirt came to be in the aisle. Affirming the trial court's exclusion of such hearsay testimony, the Court observed (at p. 148),

> "The remark to be reproduced was no more than a narration of past facts, the salesgirl is not a party defendant whose admission would be competent, and it was not within the scope of her agency for the defendant to talk for it, except in connection with making her sales and whatever else her duties may have included; and the remarks offered here were not so connected with her work, and would not bind the employer any more than if made by a stranger."

The same factors are operative here. Assuming, as appellant asserted, that the declarant was an emergency room orderly, there was no evidence that it was any part of his duties to make statements pertaining to the condition of benches in a waiting room somewhere else in the hospital or that, conversely, the statement pertained in any way to any of his authorized duties. In the words of the *Grzboski* Court, such a statement, absent such evidence, "would not bind the employer any more than if made by a stranger"; and, for that reason, it was properly excluded.

### (2) *Motion for Summary Judgment*

The law governing this case was stated succinctly in *Glaze v. Benson,* 205 Md. 26, 31-32 (1954):

> "A possessor of land is liable for harm caused to invitees by a condition of which he is aware, or which in the exercise of due care, should have been aware, and which (a) he should realize involves an

"unreasonable risk to them; and (b) he has no reason to believe that they will discover or realize the risk involved, unless he exercises reasonable care, either to make the condition reasonably safe or to give a warning adequate to enable the invitees to avoid the harm."

This is essentially a restatement of § 343 of the Restatement of the Law of Torts, 2d, which has been quoted and adopted many times by the Court of Appeals. *See Yaniger v. Calvert Building & Construction Co.,* 183 Md. 285 (1944); *Mondawmin Corporation v. Kres,* 258 Md. 307 (1970); *Honolulu Limited v. Cain,* 244 Md. 590 (1966). A key element in this is that the property owner have actual or constructive knowledge (know or should know) of the defective and dangerous condition. Absent such knowledge — or, more appropriately, evidence of such knowledge — there is no liability, and thus no right of recovery. *Bauman v. Woodfield,* 244 Md. 207 (1966); *Safeway Stores, Inc. v. Bolton,* 229 Md. 321 (1962). Therein lies the fatal weakness in appellant's case.

Aside from the hearsay remark allegedly made by the orderly, which we have held was properly excluded from consideration, there was no evidence offered by appellant directly showing that appellee was aware of the defective condition of the bench prior to the accident. Its own uncontradicted answers to interrogatories, supplemented by the deposition testimony of its Executive Vice President, show that there were no prior indications of problems with the bench — that, although it is the hospital's policy for defects noted during routine housekeeping to be reported, no such reports had been received pertaining to this bench.

In support of her action, appellant relies on (1) the mother's observations that one or more other benches in the area were splintered, (2) the *assertion* that if appellee had performed a proper inspection it would have observed the defective condition of the bench in question, (3) such favorable inference as may be drawn from the prompt destruction of the bench by appellee, and (4) the doctrine of

*res ipsa loquitur.* We find none of these, singly or in combination, to be adequate.

That one bench is splintered is not evidence that another is in danger of collapse, much less that appellee was or should have been aware of such a danger. Nor can a mere assertion of what an inspection might have revealed supplant the need for some *evidence* of what it would have revealed. It was incumbent upon appellant to produce admissible evidence that (1) appellee failed in its duty to make reasonable periodic inspections of the bench, *and* (2) had it made such reasonable inspections, it would have discovered a dangerous condition. *See Smith v. Kelly,* 246 Md. 640 (1967); *Bona v. Graefe,* 264 Md. 69 (1972); *Chesapeake and Potomac Telephone Co. v. Hicks,* 25 Md.App. 503, *cert. den.* 275 Md. 750 (1975). It simply does not suffice to claim the obvious — that if appellee had inspected the bench at the instant before its collapse, it would (or may) have noticed the condition.

These three cases — *Smith, Bona,* and *Hicks,* among others — also dispose of appellant's reliance upon the doctrine of *res ipsa loquitur.* Paraphrasing *Smith,* 246 Md. at 644, "[t]he [bench] located on appellee's premises was in constant use for various periods of time by members of the public who had exclusive possession and control over it while it was in use. The doctrine of *res ipsa loquitur* is not available in this case since the [bench] was not in the sole control of appellees. . . . The doctrine also is not applicable to this case because of the opportunity for intervening forces to have contributed to the [bench's] malfunction through no fault of appellees." (Citations omitted.)

Finally, with respect to appellant's third point — that she is entitled to the benefit of a favorable inference arising from appellee's destruction of the bench — that too is unavailing. As stated in *Maszczenski v. Myers,* 212 Md. 346, 355 (1957), "[a]lthough an inference arises from the suppression of evidence by a litigant that this evidence would be unfavorable to his cause. . . it is well settled that this inference does not amount to substantive proof and cannot take the place of

proof of a fact necessary to the other party's case." (Citations omitted.) *See also Larsen v. Romeo,* 254 Md. 220, 228 (1969). That rule applies not only in determining whether sufficient evidence has been produced to withstand a motion for directed verdict, as in *Larsen v. Romeo,* but also in deciding a motion for summary judgment, for, as noted in *Berkey v. Delia,* 287 Md. 302, 305 (1980), the function of the trial judge is "much the same" in both cases. At best, the unfavorable inference here would be that the bench was defective; no inference would necessarily arise that the hospital knew of the defect.

*Judgment affirmed; appellant to pay the costs.*