871 A.2d 627

Chandra MAANS

v.

GIANT OF MARYLAND, L.L.C.

No. 161, Sept. Term, 2004.

Court of Special Appeals of Maryland.

April 4, 2005.

Ann Wittik-Bravmann (Charles J. Zuckerman, PA, on brief), Baltimore, for appellant.

Christopher R. Dunn (DeCaro, Doran, Siciliano, Gallagher & DeBlasis, LLP, on brief), Lanham, for appellee.

Panel SALMON, KRAUSER, MOYLAN, CHARLES E., JR. (Ret., Specially Assigned), JJ.

SALMON, J.

Chandra Maans ("Maans") sued Giant of Maryland, L.L.C. ("Giant"), in the Circuit Court for Harford County, claiming that Giant, by negligently allowing water to remain on the floor, had caused her to fall and injure herself. The case was bifurcated and tried before a jury on the issue of negligence only. At the conclusion of plaintiff's case, the trial judge granted a motion for judgment in favor of Giant because, in the trial judge's view, Maans had failed to prove that Giant had either constructive or actual pre-injury notice of the wet floor.

Maans filed this timely appeal in which she asserts that the motion for judgment should not have been granted because (1) she produced sufficient evidence to raise a jury question as to whether Giant had either actual or constructive knowledge of the defective condition that caused her injury and (2) alternatively, there was no need to prove that Giant had either constructive or actual knowledge of the dangerous condition because her proof was sufficient to meet the requirements of the "mode-of-operation" rule under which proof that Giant had actual or constructive knowledge of the hazard, prior to injury, was unnecessary.

## I.

On Sunday, May 23, 1999, at approximately 1 p.m., Maans and her fifteen-year-old niece, Amanda Randolph ("Randolph"), were shopping at a busy Giant store. After selecting several items for purchase, Maans and Randolph proceeded to one of the checkout lines to pay for the items. Randolph stayed in the checkout line, but Maans walked away from it in the hope of finding a shorter one. Maans then turned around and began walking back toward her niece. When she was about "one cart length" away from the line in which her niece stood, Maans slipped and fell. She tried to avoid the fall by grabbing onto the cart of a woman in front of her but nevertheless landed on her back.

Maans, who was approximately six-and-one-half-months pregnant, felt immediate pain in her back and was unable to get up. She was transported by ambulance to a local hospital.

Maans did not see anything on the floor either before or after her fall. And, while on the floor waiting for the ambulance, she never felt water, nor did she sense that her clothes were wet.

Maans recalled that while she was on the floor she heard the assistant store manager, Roberta Braswell ("Braswell"), tell a man, who was standing nearby and holding a roll of paper towels in his hands, "to get up all the water off the floor." Later, when the paramedics arrived, she heard Braswell tell the paramedics "to be careful so they didn't slip and fall in the water." Maans did not know how the water got on the floor or how long it had been there prior to her fall.

Randolph saw her aunt fall but did not see what caused it. Afterward, because she was preoccupied with helping her aunt, she did not inspect the floor. She remembered, however, that as one of the female paramedics was picking her aunt up, "the manager said, 'Watch out, there's water.' " Randolph had no idea how the water, mentioned by the manager, got onto the floor. According to Randolph's testimony, Maans was about ten feet away from her when she fell. She did not notice whether her aunt's clothing was wet after the fall.

Braswell was the ranking store employee on duty at the time that Maans fell and was responsible for the investigation of the accident. Braswell testified that she did not see Maans fall, but when she arrived at the scene of the accident, she did find "[a] couple of drops of Citra soda on the floor." She followed the drops back to a shopping cart pushed by a customer who stood in one of the checkout lines. The customer's cart had a twelve-pack of Citra soda on the bottom rack. According to Braswell, the drops led directly from the customer's shopping cart back to where Maans fell.

Braswell filled out an accident report on May 24, 1999, which was the day after the accident. In the report, Braswell quotes Maans as saying "that she fell on water on floor." The

report also says that the floor was "last cleaned" on "5/24/99" by "Matt Pietrowski."

Braswell testified that it was not store policy to keep records of when mopping and cleaning of the floors occurred. Instead, Giant's policy required that every employee look for spills and other hazards, and if the employee discovered any hazard, it was the employee's responsibility to clean up the hazard immediately or call for a porter to do so and, when appropriate, "put a 'wet floor' sign" at the place of danger. There was, however, no one employee whose exclusive assignment was to patrol the store looking for spills or hazards.

At the time of the subject accident, Matt Pietrowski ("Pietrowski") was a courtesy clerk. A Giant courtesy clerk has numerous duties, including bagging and loading groceries and cleaning up around the front of the store. At trial, excerpts of Pietrowski's deposition were read to the jury.

Even though his name was on the accident report as the person who had last cleaned the floor prior to the accident,[1] Pietrowski had no recollection concerning the fall or any actions he took relevant thereto.

About four months after the accident, Pietrowski became a porter. The duties of a porter at Giant are to "sweep the floor, empty trash cans, mop if there was clean up, and any little odd jobs around the store that needed to be done." His duties as a porter also included patrolling around the store "pretty much at all times except when ... on break." If a porter saw a hazard on the floor, he or she was "supposed to take care of it right away."

David Miller ("Miller"), the store manager at the time of the accident, was not on duty when Maans fell, and as a consequence, he had no recollection of the incident. His testimony concerned Giant's store policies. According to Miller, one responsibility of a store porter was to walk through the store

---

1.  The accident report states that the floor was last cleaned on 5/24/99, which was the day *after* the accident. Braswell, the writer of the report, apparently mistakenly wrote the wrong date.

looking for spills. The floors were "always cleaned in the morning prior to opening, and then cleaned throughout the day as needed." Except for the morning cleaning, there were "no set times" for the floors to be recleaned.[2]

Miller, like Braswell, testified that all Giant employees were responsible for maintaining the area of the store where he or she worked and, if hazards were spotted, to either clean up the hazard or call someone else to do so.

## II.

■ The Court of Appeals has adopted the formulation enunciated in the RESTATEMENT (SECOND) OF TORTS § 343 (1965), which sets forth the general duty a private landowner, such as Giant, owes to its invitees. *Deering Woods Condo. Ass'n v. Spoon,* 377 Md. 250, 263, 833 A.2d 17 (2003). Section 343 reads:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343 (1965).

In *Burkowske v. Church Hospital Corp.,* 50 Md.App. 515, 439 A.2d 40 (1982), we applied the Section 343 standard in a

---

**2.** Maans asserts that she presented evidence that the Giant store "was short staffed on the date of the incident" because "the duty to clean up spills normally would have been assigned to a porter," but in this case the store used Pietrowski, a courtesy clerk, to clean up the water that caused her to fall. There was no evidence that Giant was short staffed, nor was there any evidence that Pietrowski cleaned up the spill in question. Pietrowski's name appears in the records of Giant as the person who "last cleaned" the floor in question—not the person who removed the hazard that caused Maans's fall.

case in which an invitee sat on a bench in a hospital waiting room and was injured when the bench collapsed. *Id.* at 516, 522, 439 A.2d 40. Judge Alan Wilner, for this Court, said:

"It was incumbent upon appellant to produce admissible evidence that (1) appellee failed in its duty to make reasonable periodic inspections of the bench, *and* (2) *had it made such reasonable inspections, it would have discovered a dangerous condition. See Smith v. Kelly*, 246 Md. 640, 229 A.2d 79 (1967); *Bona v. Graefe*, 264 Md. 69, 285 A.2d 607 (1972); *Chesapeake and Potomac Telephone Co. v. Hicks*, 25 Md.App. 503, 337 A.2d 744, *cert den.* 275 Md. 750 (1975). It simply does not suffice to claim the obvious—that if appellee had inspected the bench at the instant before its collapse, it would (or may) have noticed the condition."

*Id.* at 523, 439 A.2d 40 (emphasis added).

At the time of the accident, Maans was Giant's invitee. "It is the law in Maryland . . . that the proprietor of a store owes a duty to . . . [an invitee] to exercise ordinary care to keep the premises in a reasonably safe condition and will be liable for injuries sustained in consequence of a failure to do so." *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 117, 113 A.2d 405 (1955).

The customer is entitled to assume that the proprietor will exercise reasonable care to ascertain the condition of the premises, and if he discovers any unsafe condition he will either take such action as will correct the condition and make it reasonably safe or give a warning of the unsafe condition.

*Id.* at 117–18, 113 A.2d 405 (citations omitted). "The duties of a business invitor thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers." *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md.App. 381, 388, 693 A.2d 370 (1997).

A store operator, such as Giant, is not the insurer of the invitee's safety. *Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 232, 210 A.2d 724 (1965). In addition, "the

burden is upon the customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence" prior to the invitee's injury. *Lexington Mkt. Auth. v. Zappala,* 233 Md. 444, 446, 197 A.2d 147 (1964) (citations omitted); *see also Moulden,* 239 Md. at 232, 210 A.2d 724, and *Tennant,* 115 Md.App. at 389, 693 A.2d 370.

■ Approximately seventy years ago, the Court of Appeals, in *Moore v. American Stores Co.,* 169 Md. 541, 550–51, 182 A. 436 (1936), spelled out in detail the duty that the operator of a grocery store owes to its patron. The grocery store owner/operator has

> a duty to exercise reasonable and ordinary care to see that its premises were in such a condition that its customers might safely use them while visiting the store upon its invitation to buy its wares. . . . In the performance of that duty it [is] required to exercise reasonable care to discover conditions which, if known to it, it should have realized involved an unreasonable risk to such patrons. . . . Any breach of that duty resulting in injury to one lawfully on its premises as an invitee would constitute negligence, *if, but only if, it knew, or by the exercise of reasonable care could have discovered, the conditions which created the peril, and had no reason to believe that its invitees would realize the risk involved therein.*

*Id.* (citations omitted) (emphasis added).

Recently, in *Deering Woods, supra,* 377 Md. at 264, 833 A.2d 17, the Court of Appeals quoted *Moore, supra,* with approval, as follows:

> It is not necessary that there be proof that the invit[o]r had actual knowledge of the conditions creating the peril; it is enough if it appear that it could have discovered them by the exercise of ordinary care, *so that, if it is shown that the conditions have existed for a time sufficient to permit one, under a duty to know of them, to discover them, had he exercised reasonable care, his failure to discover them may*

*in itself be evidence of negligence sufficient to charge him with knowledge of them.*

*Id.* (emphasis added).

In *Rehn v. Westfield Am.*, 153 Md.App. 586, 593, 837 A.2d 981 (2003), Judge Adkins, for this Court, succinctly summarized the evidence that a customer must put forward in a slip-and-fall case against the invitor:

The evidence must show not only that a dangerous condition existed, but also that the proprietor *"had actual or constructive knowledge of it, and that that knowledge was gained in sufficient time to give the owner the opportunity to remove it or to warn the invitee."* *Keene v. Arlan's Dep't Store of Baltimore, Inc.*, 35 Md.App. 250, 256, 370 A.2d 124 (1977). Whether there has been sufficient time for a business proprietor to discover, cure, or clean up a dangerous condition depends on the circumstances surrounding the fall. *See Deering Woods Condo. Ass'n v. Spoon*, 377 Md. 250, 833 A.2d 17 (2003). " 'What will amount to sufficient time depends upon the circumstances of the particular case, and involves consideration of the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions.' " *Id.* (quoting *Moore v. Am. Stores Co.*, 169 Md. 541, 551, 182 A. 436 (1936)).

Maans argues that she presented sufficient evidence from which the jury could have found that she slipped on water rather than droplets of Citra soda,[3] as testified to by Braswell. We agree. Evidence that the assistant manager, immediately after Maans's fall, directed a person with towels in his hand "to clean up all that water" was sufficient evidence,

---

3. Citra Soda, like water, is a colorless liquid.

standing alone, to allow a fact-finder to infer that Maans slipped on water, not on Citra soda.[4]

Maans also contends that she presented sufficient evidence from which the jury could have found that Giant had, prior to the accident, constructive knowledge of the presence of water on the floor. In support of that contention, appellant argues:

First, there was no evidence as to when the area where Maans fell was last inspected or cleaned; [s]econd, Giant did not specifically assign an employee to look for spills and other hazards; [t]hird, Maans fell right near one of Giant's employee's work stations; and [f]ourth, this employee [the cashier] was never told to look for hazards near her check out line. These facts, when considered together, at least present a jury question as to whether Giant should have known about the water on the floor. In other words, Maans presented sufficient evidence to at least present a jury question as to whether Giant had constructive notice of the condition.

(References to record extract omitted.)

It is true that Giant produced no evidence during appellant's case as to when the area where appellant fell was last inspected or cleaned, but appellant's statement that "Giant did not specifically assign an employee to look for spills and other hazards" is potentially misleading. The relevant testimony was as follows:

Q [ATTORNEY FOR APPELLANT]: On May 23, 1999, Giant did not assign any employees to walk through the store and look for hazards; is that correct?

A [BRASWELL]: That's everyone's job.

Q: Was there a specific employee assigned to that job?

---

4. In *Keene v. Arlan's Dep't Store of Baltimore, Inc.*, 35 Md.App. 250, 252, 370 A.2d 124 (1977), a cashier, shortly after the plaintiff's fall, blurted out: "I told them if this wasn't cleaned up, someone's going to fall." We held in *Keene* that the cashier's blurt was an excited utterance from which the jury could infer legitimately that, prior to the fall, the cashier notified her principal, the store owner, "that a dangerous condition existed in the premises and that an invitee might suffer injuries as a result." *Id.* at 257, 370 A.2d 124.

A:   Not specifically for that one duty, *but we all do that as we go through the store.*   I guess I would be the one that would be most inclined to have that as one of my job descriptions touring the store.   It's continual.

(Emphasis added.)

Later in Braswell's testimony, she estimated that 98 percent of her time was spent walking the floors of the store looking for hazards.   She also testified that any employee who sees a hazardous condition on the floor is responsible for either cleaning it up or getting someone else to do so.   Braswell's testimony was corroborated by Pietrowski, who testified:

Q   [ATTORNEY FOR APPELLANT]: Now, in terms of whether things were on the floor, were you required or were you supposed to patrol around the store and look for anything that could probably [sic] be on the floor?

A:   Well, we were always walking around the store, pretty much at all times except when we were on break.   So you don't have an assigned route, but yes, we were always walking around the floor.

Q:   And then if you noticed something on the floor, you were supposed to take care of it right away?

A:   Yes.

Miller, the store manager, also corroborated Braswell's testimony. He testified that throughout the day "employees are looking down at the floor going about their business, and if they see a spill it's their job to either clean it up themselves or call for someone else to clean it up."

It may well be true, as appellant intimates, that the cash-register operators at Giant should have been, but were not, told to look out for spills near the checkout line.   But that fact is here irrelevant because appellant produced not one scintilla of evidence to show that if any of the cash-register operators had looked they would have seen the water.   No evidence was elicited as to how far any cash-register operator was from the spot where the fall occurred.   All that was shown was that Maans fell approximately one "cart length" away from the line in which her niece stood and that her niece was standing

somewhere in a register line. There was no testimony as to how long the line was or how far away Maans's niece was from the cash-register operator, nor was there evidence as to how far *any* cashier was from the water. Additionally, in regard to the issue of what the cash-register operator would have seen if she had looked, there was no evidence produced as to how much water was on the floor to be seen, nor was there evidence that a cashier, if he or she had looked, could have seen the transparent liquid.[5]

Appellant contends that constructive notice may be proven by introduction of evidence that, prior to the accident, defendant failed to make reasonable inspection of the premises. We shall assume, purely for purposes of argument, that Giant breached its duty to make reasonable inspections. The adoption of this assumption, however, does not aid appellant. Appellant failed to produce any evidence that had Giant made reasonable inspections prior to the accident it would have discovered the water on the floor in time to prevent the accident. For all that was shown by appellant, the water could have been spilled by a customer seconds before her fall. This is fatal to her argument that Giant is liable because it breached its duty to make reasonable inspections. *See Burkowske*, 50 Md.App. at 523, 439 A.2d 40 (To prove liability, an invitee must show that if the owner/occupier had made reasonable inspections, the defect would have been discovered in

---

**5.** To support her contention that constructive notice can be inferred from the mere fact that the fall occurred "right near one of Giant's work stations," Maans cites to cases from other jurisdictions. But, in *Lusby v. Baltimore Transit* Co., 195 Md. 118, 72 A.2d 754 (1950), the Court of Appeals rejected an analogous contention. In *Lusby*, the appellant slipped and fell on a grease spot while exiting a bus. The plaintiff/appellant argued that the evidence demonstrated constructive notice because the grease spot "was plainly visible to [the bus operator], had he looked at the spot where the foreign substance was located." *Id.* at 122, 72 A.2d 754. The Court held:

There is no allegation that he [the bus operator] did, in fact, see it [the grease spot].... Just why it is claimed that the operator could have seen it, if he had looked, but that the injured appellant did not see it, is not explained.

*Id.* at 122–23, 72 A.2d 754.

time to prevent the invitee's injury.). *See also Deering Woods,* 377 Md. at 267–68, 833 A.2d 17 (to show constructive knowledge, invitee must demonstrate that defective condition existed long enough to permit one under a duty to inspect to discover the defect and remedy it prior to the injury).

Appellant, relying on a Court of Appeals case decided approximately seventy-six years ago (*Dickey v. Hochschild, Kohn & Co.,* 157 Md. 448, 146 A. 282 (1929)), contends that an invitee is not required to prove that if a reasonable inspection had been made by the store owner, such an inspection would have revealed the defect in sufficient time to abate the danger prior to the accident. In *Dickey,* the plaintiff was walking down some stairs when her left foot caught on a step; she was thrown off balance and fell to the bottom of some stairs. *Id.* at 449, 146 A. 282. Immediately after the accident, plaintiff's shoe was observed to be "so tightly wedged between the floor of the first step down from the landing and the metal strap nearest the riser, that, to remove it, it was necessary to pull it out." *Id.* at 449, 146 A. 282. Plaintiff introduced proof showing that

> the accident was caused by the loose end of an iron strap being raised above the surface of the step. It appears that the strap was designed to be fastened to the step by a screw, for the fast part was so fastened, and there was a hole for the screw in the loose end, but there was no screw in it.

*Id.* at 452, 146 A. 282.

Forty-two years after *Dickey* was decided, the Court of Appeals in *Leannarda v. Lansburgh's,* 260 Md. 701, 706, 273 A.2d 149 (1971), summarized the holding and import of *Dickey.* The Court did so in a slip-and-fall case in which the plaintiff tripped after one of her spiked heels caught in a rug on store premises. The *Leannarda* Court said:

> In *Dickey* the plaintiff's heel became wedged between a metal tread and the wooden step supporting it. *We held it was proper to submit the issue of negligence to the jury since the only permissible inferences were that the steps*

*were defectively designed or constructed, or else there was a failure to inspect.* There was evidence that the screws with which the tread was fastened to the step were loose immediately after the accident. Since the plaintiff could not have created the defective condition *it was possible to infer that it had existed for some time before her injury.* Such an inference is unavailable here. As in *Selby* [*v. S. Kann Sons Co.,* 73 F.2d 853 (D.C.Cir.1934),] it is quite possible that [Leannarda's] stumble created the alleged defect. We see a clear distinction between a metal tread which could have been loosened only by a screwdriver or a long period of sustained wear and tear, and a carpet seam none the worse for wear but vulnerable to the spiked heels of [Leannarda] or an earlier customer.

*Id.* at 706–07, 273 A.2d 149 (emphasis added).

The case at hand is also distinguishable from *Dickey* in that here it is impossible to infer, legitimately, that the defect (water on the floor) had existed for some appreciable time before the injury.[6]

As mentioned earlier, appellant stresses that "there was no evidence as to when the area where Maans fell was last inspected or cleaned." Nevertheless, the issue as to when the area was last cleaned was irrelevant because there was no evidence that the floor's lack of cleanliness caused the accident. Moreover, while it is true that there was no proof as to when the floor was last inspected prior to the accident, that lack of proof, standing alone, is insufficient to prove liability. *See Deering Woods,* 377 Md. at 267–68, 833 A.2d 17, and *Burkowske,* 50 Md.App. at 523, 439 A.2d 40.

In support of her constructive-notice argument, appellant also contends:

---

**6.** The case *sub judice* is also distinguishable from *Dickey* in that it could not be inferred, legitimately, that the injury was caused by defendant's defective construction, nor can it be said that Giant produced no evidence that it exercised ordinary care to see that the floor was kept in a safe condition. Here, appellant's own witness, Braswell, testified uncontradictedly that, while on duty, she spent 98 percent of her time patrolling the store and looking out for possible dangers.

It is true that self-service grocery store owners are not required by statute to maintain ... [sweep records]. However, if they fail to maintain such records, they do so at their peril, since if in fact they cannot produce any testimony or records to document when the area was last inspected, a jury is entitled to conclude that they did not satisfy their duty to inspect. To hold otherwise would place an unreasonable burden on plaintiffs. Customers do not have access to a grocery store's records or employees. In cases where no sweep logs are kept, it is almost impossible for the customer to gather evidence as to when the area was last inspected and/or cleaned.

Appellant cites no Maryland authority supporting the aforementioned *ipse dixit*, and we know of none. The duty of a store owner to an invitee, such as appellant, is well established in Maryland, as can be seen by the cases cited *supra*. Under Maryland law, the owner/operator of a store has no duty to an invitee to keep records in order to lighten the invitee's burden of proving negligence.

Appellant also argues that she presented evidence sufficient to prove that "Giant had actual notice of the water" prior to the accident. According to appellant, "a reasonable inference can be drawn that the water was on the floor because an employee of Giant spot mopped the floor." The sole factual predicate for her "actual notice" argument is expressed by appellant as follows: "Giant employees ... testified that Giant will spot mop the floor, including the area around the cash registers, if it is necessary to clean up a hazard or if the floor is dirty." From this accurate summary of pertinent testimony, appellant continues, "As Giant does not keep any records nor [were] any Giant employees able to testify when the area where [p]laintiff fell was last mopped ..., a jury certainly could conclude that the plaintiff fell on water after the area where she fell had been mopped by a Giant employee." As authority for the foregoing proposition, appellant cites *Moore v. American Stores*, 169 Md. 541, 182 A. 436 (1936); *Grzboski v. Bernheimer Leader Stores*, 156 Md. 146, 143 A. 706 (1928); *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md.

App. 381, 693 A.2d 370 (1997); and *Link v. Hutzler Bros. Co.*, 25 Md.App. 586, 335 A.2d 192 (1975). None of the cases cited support appellant's argument. There simply was no evidence from which a jury could find that the area of the store had been "spot mopped" at any time here relevant. The only way the jury could conclude that the water on the floor was caused by spot mopping would be if the jury engaged in raw speculation or conjecture, which is forbidden. *See Moulden, supra,* 239 Md. at 232, 210 A.2d 724 ("The evidence is legally sufficient to warrant submission of a case to the jury if it rises above speculation or conjecture....").

### III.

Appellant urges us to reject the requirement that an invitee must prove that the invitor had actual or constructive pre-injury notice of a defect and substitute for that requirement the "mode-of-operation rule." Twenty-one of our sister states have adopted that rule, *viz:* Arizona, *Chiara v. Fry's Food Stores of Arizona, Inc.*, 152 Ariz. 398, 733 P.2d 283, 285–87 (1987); Colorado, *Safeway Stores, Inc. v. Smith,* 658 P.2d 255, 257–58 (Colo.1983); Florida, *Owens v. Publix Supermarkets, Inc.,* 802 So.2d 315, 332 (Fla.2001); Hawaii, *Gump v. Walmart Stores, Inc.,* 93 Hawai'i 428, 5 P.3d 418, 431–35 (1999), *aff'd in part and rev'd in part on other grounds,* 93 Hawai'i 417, 5 P.3d 407 (2000); Idaho, *McDonald v. Safeway Stores, Inc.,* 109 Idaho 305, 707 P.2d 416, 418–20 (1985); Indiana, *Golba v. Kohl's Dep't Store, Inc.,* 585 N.E.2d 14, 15–16 (Ind.Ct.App. 1992); Kansas, *Jackson v. K–Mart Corp.,* 251 Kan. 700, 840 P.2d 463, 469–70 (1992); Louisiana, *Gonzales v. Winn–Dixie Louisiana, Inc.,* 326 So.2d 486, 488–90 (La.1976); Mississippi, *F.W. Woolworth Co. v. Stokes,* 191 So.2d 411, 416–18 (Miss. 1966); Missouri, *Sheil v. T.G. & Y. Stores Co.,* 781 S.W.2d 778, 781–82 (Mo.1989); New Jersey, *Wollerman v. Grand Union Stores, Inc.,* 47 N.J. 426, 221 A.2d 513, 514 (1966); New Mexico, *Mahoney v. J.C. Penney Co.,* 71 N.M. 244, 377 P.2d 663, 673 (1962); Oklahoma, *Lingerfelt v. Winn–Dixie Texas, Inc.,* 645 P.2d 485, 489 (Okla.1982); Tennessee, *Worsham v. Pilot Oil Corp.,* 728 S.W.2d 19, 20 (Tenn.Ct.App.1987); Texas,

*Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 298 (Tex. 1983); Utah, *Canfield v. Albertsons, Inc.*, 841 P.2d 1224, 1226–27 (Utah Ct.App.1992); Vermont, *Debus v. Grand Union Stores of Vermont*, 159 Vt. 537, 621 A.2d 1288, 1293–94 (1993); Washington, *Pimentel v. Roundup Co.*, 100 Wash.2d 39, 666 P.2d 888, 893 (1983); Wisconsin, *Steinhorst v. H.C. Prange Co.*, 48 Wis.2d 679, 180 N.W.2d 525, 527 (1970); Wyoming, *Buttrey Food Stores Div. v. Coulson*, 620 P.2d 549, 552–53 (Wyo.1980).

Under the mode-of-operation rule, "the plaintiff is not required to prove notice if the proprietor could reasonably anticipate that hazardous conditions would regularly arise," based on the manner the owner/occupier regularly does business. *Chiara*, 733 P.2d at 285. The key to the application of the mode-of-operation rule is the reasonable anticipation of the patron's carelessness under the circumstances. *Tom v. S.S. Kresge Co., Inc.*, 130 Ariz. 30, 633 P.2d 439, 441 (1981). Under the mode-of-operation rule, actual or constructive notice of a dangerous condition prior to an accident is immaterial. *Gump*, 5 P.3d at 441.[7]

The "mode-of-operation" rule was explained by the Arizona Supreme Court in *Chiara* as follows:

Courts in Arizona and in other jurisdictions have mitigated this seeming inequity [of requiring that the store owner have prior actual or constructive notice of the defect] by developing the "mode-of-operation" rule. The "mode-of-operation" rule looks to a business's choice of a particular mode-of-operation and not events surrounding the plaintiff's

**7.** For thorough discussions of the mode-of-operation rule, *see* Andrew Flach, *Missouri Removes a Tough Hurdle for "Slip and Fall" Plaintiffs*, 56 Mo. L.Rev 163, 170–71 (1991); Steven D. Winegar, *Reapportioning the Burden of Uncertainty: Storekeeper Liability in the Self–Service Slip–and–Fall Case*, 41 UCLA L. Rev. 861, 888–91 (1994); Sonja A. Soehnel, Annotation, *Liability of Operator of Grocery Store to Invitee Slipping on Spilled Liquid or Semiliquid Substance*, 24 A.L.R.4th 696, 704–05 (1983); Donald M. Zupanec, Annotation, *Store or Business Premises Slip–and–Fall: Modern Status of Rules Requiring Showing of Notice of Proprietor of Transitory Interior Condition Allegedly Causing Plaintiff's Fall*, 85 A.L.R.3d 1000, 1004–08 (1978).

accident. Under the rule, the plaintiff is not required to prove notice if the proprietor could reasonably anticipate that hazardous conditions would regularly arise. *See Bloom v. Fry's Food Stores*, 130 Ariz. 447, 636 P.2d 1229 (1981); *Tom v. S.S. Kresge Co.*, 130 Ariz. 30, 633 P.2d 439 (1981). In other words, a third person's independent negligence is no longer the source of liability, and the plaintiff is freed from the burden of discovering and proving a third person's actions. *A plaintiff's proof of a particular mode-of-operation simply substitutes for the traditional elements of a prima facie case—the existence of a dangerous condition and notice of a dangerous condition.* ...

The mode-of-operation rule is of limited application because nearly every business enterprise produces some risk of customer interference. If the mode-of-operation rule applied whenever customer interference was conceivable, the rule would engulf the remainder of negligence law. A plaintiff could get to the jury in most cases simply by presenting proof that a store's customer could have conceivably produced the hazardous condition.

For this reason, a particular mode-of-operation only falls within the mode-of-operation rule when a business can reasonably anticipate that hazardous conditions will regularly arise. *Cf. Jamison v. Mark C. Bloome Co.*, 112 Cal. App.3d 570, 169 Cal.Rptr. 399, 401–02 (1980) (business not liable to persons injured on spilled oil because business has no reason to anticipate vandalism of oil drums); *Overstreet v. Gibson Product Co.*, 558 S.W.2d 58, 61 (Tex.Civ.App.1977) (grocery store owner not liable for customer bitten by a rattlesnake). A plaintiff must demonstrate the foreseeability of third-party interference before Arizona courts will dispense with traditional notice requirements. Many of the cases upholding the applicability of the mode-of-operation rule have accordingly involved open food displays. *E.g., Bloom v. Fry's Food Stores, Inc., supra* (grapes); *Tom v. S.S. Kresge Co., supra* (soft drinks); *Rhodes v. El Rancho Markets*, 9 Ariz.App. 576, 454 P.2d 1016 (1969)(lettuce); *Jasko v. F.W. Woolworth Co.*, 177 Colo. 418, 494 P.2d 839

(1972)(pizza sold by the slice); *Gonzales v. Winn–Dixie Louisiana, Inc.,* 326 So.2d 486 (La.1976) (glass bottle of olive oil); *Bozza v. Vornado, Inc.,* 42 N.J. 355, 200 A.2d 777 (1964) (self-service cafeteria); *Ciminski v. Finn Corp.,* 13 Wash.App. 815, 537 P.2d 850 (1975) (self-service cafeteria).

733 P.2d at 285–86.

Appellant contends that under the mode-of-operation rule she produced sufficient evidence that Giant could have reasonably anticipated that customers "might drop items when placing them on the conveyor belt in the checkout line." [8]

Although a minority of our sister states have adopted the mode-of-operation rule advocated by appellant, that rule is at odds with the precedent (cited *supra*) from this Court and the Maryland Court of Appeals requiring that an invitee who sues an invitor for a defective condition on the premises must prove that, prior to the injury, the landowner had actual or constructive knowledge of the defective condition in sufficient time to remedy or warn of it prior to the injury.

In sum, the mode-of-operation rule, unlike the Maryland rule, does not require the invitee to prove "time on the floor." The Maryland rule has two purposes: (1) it requires a demonstration of how long the dangerous condition existed prior to the accident so that the fact-finder can decide whether the storekeeper would have discovered it if he or she had exercised ordinary care; and (2) it also shows that the interval between inspections was at least as long as the time on the floor. Thus, proof of time on the floor is relevant, not only as

---

8. In *Chiara,* the Arizona Court of Appeals held that the plaintiff had the burden of proving that a hazardous condition, like the one that caused the plaintiff's fall, could reasonably have been anticipated prior to plaintiff's injury. It is doubtful that Maans's proof, in the case at hand, was sufficient to prove that the fall occurred when a customer was loading the checkout conveyor belt. Maans was about one cart length away from the checkout line when she fell, but the record is silent as to how far she was from the conveyor belt (as opposed to the line) when she was injured. Thus, it is not at all clear that the water on the floor was caused by a customer who dropped an item in the checkout line.

to notice but also as to the issue of what care was exercised. *See* Winegar, *supra,* 41 UCLA L.Rᴇᴠ. at 889.

Doing away with the requirement that the invitee must prove how long the dangerous condition existed pre-injury is the functional equivalent of doing away with the requirement that the plaintiff prove that the defendant's negligence was the proximate cause of the plaintiff's injury. This case illustrates that point. Without "time on the floor" evidence, the store-keeper would be potentially liable even though there is no way of telling whether there was anything Giant could have done that would have avoided the injury.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**