REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 388

September Term, 2014

---

RAFAIL ZILICHIKHIS, ET AL.

v.

MONTGOMERY COUNTY, MARYLAND,
ET AL.

---

Woodward,
Arthur,
Salmon, James P.
  (Retired, Specially Assigned),

JJ.

---

Opinion by Arthur, J.

---

Filed:  May 28, 2015

Appellant Rafail Zilichikhis slipped and fell inside a parking garage owned and operated by Montgomery County.  He and his wife brought an action against the County and the private companies that operate or maintain the garage.  The Circuit Court for Montgomery County granted summary judgment on the grounds that the Zilichikhises had produced no admissible evidence that any of the defendants had the requisite actual or constructive knowledge of the slip-and-fall hazard and that the County enjoyed governmental immunity with respect to its operation of the garage.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.      Slip and Fall Inside Garage 49**

Dr. Rafail Zilichikhis and Mrs. Lubov Zilichikhis reside at the Metropolitan Apartments at 7620 Old Georgetown Road in Bethesda.  A public parking facility known as Garage 49 or the Metropolitan Garage is located at the same address, underneath the apartment building.  Montgomery County owns and operates the garage as part of the Bethesda Parking Lot District.

On the evening of June 21, 2011, Dr. Zilichikhis, who was 82 years old at the time, parked his car in a handicapped parking spot near elevators on the ground level of Garage 49.  He planned to drive his wife to a medical appointment the next morning.  Some time before 10:00 a.m. on June 22, 2011, Dr. Zilichikhis walked across the street to purchase a newspaper.  He then returned to the garage and walked toward his vehicle.

A short distance away from his parked car, Dr. Zilichikhis slipped and fell onto the concrete surface.  On the ground, he noticed a wet and greasy substance that he had not

previously seen.  When he tried to stand up, he slipped and fell a second time.  After crawling out of the area, he was able to stand up and make his way to his vehicle.

A few minutes later, Mrs. Zilichikhis arrived at the passenger side of the vehicle, walking from a different direction.  Dr. Zilichikhis informed his wife that he had fallen and injured himself on a slippery surface, in the area between the front driver's side of the vehicle and a nearby railing.  She noticed that his knee was slightly bloody.

The Zilichikhises drove away and attended Mrs. Zilichikhis's scheduled appointment.  Afterwards, they drove to the nearby residence of their daughter, Alona Bauer.  Dr. Zilichikhis soon began to complain of a severe headache.  He was taken to a hospital for emergency treatment, referred to a neurologist, and diagnosed with a subdural hematoma that required immediate surgery.  Dr. Zilichikhis continues to suffer various impairments as a result of his traumatic brain injury.

The Zilichikhises' other daughter, Irina Lotvin, is also a resident of the Metropolitan Apartments.  Ms. Lotvin returned to the garage after her father's surgery on the evening of June 22, 2011.  She inspected an area that she believed to be the area in which her father fell.  Additional photographs of that same location were taken in July and August of 2011 by Ms. Bauer and by an attorney for the Zilichikhises.

B.     **Complaint for Negligence and Loss of Consortium**

In December 2011, Dr. Zilichikhis gave notice of a potential tort claim to the County Executive for Montgomery County.  *See* Md. Code (1974, 2006 Repl. Vol.), §

-2-

5-304 of the Courts and Judicial Proceedings Article.

On September 10, 2012, Dr. Zilichikhis and Mrs. Zilichikhis filed a complaint in the Circuit Court for Montgomery County. The complaint asserted claims against a number of defendants: Montgomery County, the owner of the garage; the Montgomery County Department of Transportation, an agency charged with administering the parking district; Penn Parking, Inc., the management company for the garage; and Colossal Contractors, Inc., a company that performs cleaning services for the garage through a contract with the County. The complaint asserted that Dr. Zilichikhis was entitled to recover for his injuries and that Mrs. Zilichikhis was entitled to recover for loss of consortium.[1]

Each of the defendants filed an answer denying liability. The County raised the affirmative defense of governmental immunity and asserted that the County lacked any actual or constructive knowledge of the dangerous condition.[2] Colossal Contractors asserted, among other things, that it did not have any "reasonable notice" or any "opportunity to cure or warn" of the condition that allegedly caused the slip and fall.

_____

[1] Originally, the complaint also asserted claims against Chipotle Mexican Grill, Inc., which operates a nearby restaurant. The complaint alleged that Chipotle had contributed to the hazard through its disposal of grease and cooking oil. After an analysis of Dr. Zilichikhis's soiled clothing determined that he had probably fallen on motor oil, the Zilichikhises voluntarily dismissed all claims against Chipotle with prejudice.

[2] The County had first moved to dismiss the complaint on the grounds that it possessed governmental immunity and that the Department of Transportation lacked the capacity to be sued. The court denied this motion without prejudice.

-3-

In addition to answering the complaint, Colossal Contractors filed cross-claims against the County, the Department of Transportation, and Penn Parking, seeking indemnity and contribution, as well as attorney's fees and costs. Penn Parking responded by filing its own cross-claim, seeking indemnity and contribution from Colossal Contractors.

## C.    Motions for Summary Judgment

After extensive discovery, the County filed a motion to dismiss and for summary judgment on December 4, 2013. The County argued that the court should dismiss the claims against the Montgomery County Department of Transportation because the Department did not have the capacity to be sued. The County also argued that there was no factual dispute that it operated the garage in a governmental capacity and thus that it was immune from liability. *See Bagheri v. Montgomery Cnty.*, 180 Md. App. 93, *cert. denied*, 406 Md. 112 (2008).

The County further argued that the Zilichikhises had no evidence that it had the requisite actual or constructive knowledge of the dangerous condition in time to remedy the condition before Dr. Zilichikhis's fall. *See*, *e.g.*, *Joseph v. Bozzuto Mgmt. Co.*, 173 Md. App. 305, 315 (2007) (quoting *Rehn v. Westfield America*, 153 Md. App. 586, 593 (2003), *cert. denied*, 380 Md. 619 (2004)) (to sustain a cause of action in a premises liability case, the plaintiff "must prove not only that a dangerous condition existed but also that the [defendants] 'had actual or constructive knowledge of the dangerous

-4-

condition and that the knowledge was gained in sufficient time to give [them] the opportunity to remove it or to warn the [plaintiff]").  Soon thereafter, Colossal Contractors and Penn Parking also moved for summary judgment on the ground that those defendants had no actual or constructive knowledge of the hazard.

Collectively, the defendants argued that the Zilichikhises had no evidence that the motor oil spill existed for any period of time sufficient for the defendants to protect Dr. Zilichikhis or to warn him of the danger.  The defendants pointed out that Dr. Zilichikhis did not see any oil in the area when he parked his car the previous evening.  They emphasized that Dr. Zilichikhis had touched and smelled the oil after his fall, and he described it as "fresh."[3]  They further contended that there was no evidence that any of the defendants created the motor oil spill or actually knew of its existence.

### D.    Opposition to Summary Judgment

On December 27, 2013, the Zilichikhises responded to each of the defendants' motions.  The Zilichikhises argued that they had established factual disputes as to whether the defendants knew or should have known of the hazardous condition.  They relied upon affidavits from Ms. Lotvin and another resident, which stated that before June 2011 Garage 49 was always dirty and that the parking surface was often slippery.  They also relied upon deposition testimony from Mrs. Zilichikhis, in which she stated that she had

---

[3] In his deposition, Dr. Zilichikhis explained that he was familiar with the smell and texture of motor oil from his experiences as a professional taxi and limousine driver.

complained to Penn Parking attendants about the general condition of the garage before the accident. In addition, the Zilichikhises pointed to communications from County representatives after the accident, which indicated that the County was aware of problems with grease and water infiltration in the garage (though not at the specific site where Dr. Zilichikhis fell).

Central to the Zilichikhises' opposition to summary judgment was their argument that the defendants "need not have knowledge of the specific oil spot on which [Dr.] Zilichikhis fell," but rather that the defendants "need only be on notice of the dangerous condition in general." *But see Maans v. Giant of Maryland, L.L.C.*, 161 Md. App. 620, 637-40, *cert. denied*, 388 Md. 98 (2005) (rejecting the proposition that a plaintiff need not prove notice if the proprietor could reasonably anticipate that hazardous conditions would regularly arise because of the manner in which the owner or occupier regularly does business). The Zilichikhises argued that each of the defendants should have known about recurring spills that frequently created slippery conditions, but that the defendants did nothing to remedy that problem.

The Zilichikhises also contended that there were unresolved factual issues material to the County's defense of governmental immunity. They argued that the County could not assert governmental immunity because they had adduced evidence that the parking garage was used as a "walkway, footway, or public way." *See Higgins v. City of Rockville*, 86 Md. App. 670, 679, *cert. denied*, 323 Md. 309 (1991) ("a municipality has a

'private proprietary obligation' to maintain its streets, as well as the sidewalks, footways and the areas contiguous to them, in a reasonably safe condition"). The Zilichikhises submitted affidavits from two residents of the Metropolitan Apartments, who stated that they frequently or occasionally walked through the parking garage because the garage served as a convenient route to exit the apartment building, and that they had never been asked to stop walking through the garage.

The Zilichikhises' memorandum suggested that Dr. Zilichikhis was no longer a reliable witness. They characterized his deposition testimony as "jumbled, confusing, and unreliable in some regards due to his injuries, his inability to hear properly, and because of [] translation from English to [his native] Russian."

### E.    Supplemental Response and Accompanying Affidavits

On February 7, 2014, just six days before a scheduled hearing on the summary judgment motions, the Zilichikhises filed supplemental responses in opposition to the defendants' motions. Among other things, the Zilichikhises submitted a set of undated photographs accompanied by two affidavits. The photographs depicted several dark stains on a concrete surface, extending across a parking space and a walkway that was painted with yellow lines, near a set of steps and a ramp set off by handrails.

A new affidavit from Ms. Lotvin stated:

> In the evening on June 22, 2011, I visited the area where my father fell and took several pictures, copies of which are appended . . . . The photographs were taken approximately eight hours after my father fell.

The photographs are true and accurate copies of the photographs I took on June 22, 2011. They fairly and accurately depict the scene of my father's fall at the time the photographs were taken . . . .

Ms. Lotvin's affidavit did not disclose any basis to conclude that she had personal knowledge that the photographs depicted the actual location where her father had fallen. Nor did the affidavit disclose any basis to conclude that she had personal knowledge of the condition at that location at the time her father fell eight hours before.

The second new affidavit came from Dennis R. Andrews, Ph.D., safety engineer who had previously offered an expert opinion that Dr. Zilichikhis would not have been injured if the parking garage surface had been maintained properly. Dr. Andrews offered a number of opinions based on his review of the photographs taken by Ms. Lotvin, including the following opinion:

The size, shape, nature, condition, and location of the motor oil, and the similar conditions located nearby in the photographs, indicate that the hazard has been present in that area for a significant period of time, very likely longer than 36-48 hours.

The size, shape, nature, condition, and location of the motor oil, particularly given its close proximity to a set of stairs and handicapped parking spaces, indicate that the hazard would have and should have been recognized on any routine inspection or walk-through of the garage.

The County filed a reply on February 10, 2014. The County argued that, notwithstanding the submissions in the supplemental opposition, the Zilichikhises still had no competent evidence that the County had constructive knowledge of the oil spill.

-8-

The County pointed out that Dr. Zilichikhis himself never testified that the newly-disclosed photographs depicted the condition of the garage at the time of his fall. The County also argued that Dr. Andrews's expert opinion on the duration of the spill was "inherently untrustworthy, speculative, and therefore, inadmissible."

## F.    Circuit Court's Summary Judgment Ruling

After being rescheduled because of a blizzard, the summary judgment hearing was held on February 26, 2014. In an oral ruling, the court granted each of the defendants' motions.

The court concluded, first, that the Zilichikhises had no evidence that the hazardous condition existed for any significant period of time before the fall. The court reasoned that, without any such evidence, the Zilichikhises could not prove that the defendants had notice of the hazard.

The court rejected any arguments based on the newly-disclosed photographs, because the Zilichikhises had laid no foundation to show that the photographs depicted the actual site of the fall. The court observed that Dr. Zilichikhis had testified at his deposition that he fell in a parking space, not in the pedestrian walkway with yellow, painted lines that was depicted in the photographs. The court also observed that Mrs. Zilichikhis, in her deposition, had testified that her husband had said that he fell in a parking space, not in a walkway with painted lines. In view of that testimony, the court asserted, "There is not even any evidence that this oil spot is the spot that we're talking

about." Consequently, the court reasoned that the Zilichikhises had not adduced a sufficient basis to admit the expert opinion based on those photographs.[4]

Turning to the issues that pertained specifically to the County, the circuit court concluded that the County was immune because it operated the garage in a governmental rather than a proprietary capacity. The court rejected the Zilichikhises' argument that Dr. Zilichikhis fell in a public walkway where governmental immunity did not apply, because the deposition testimony established only that Dr. Zilichikhis slipped and fell in a parking space.[5]

On March 4, 2014, the court entered orders granting summary judgment in favor of the County, Penn Parking, and Colossal Contractors. Although the grant of summary judgment eliminated any grounds for the cross-claims that Penn Parking and Colossal Contractors had asserted, the court did not formally dispose of those claims.

After the court denied the Zilichikhises' motion for reconsideration, the Zilichikhises filed a timely notice of appeal.

---

[4] The court also voiced concerns about the expert's qualifications and expressed skepticism about whether any expert "from a photo, could make any type of forensic claim as to how long the spill or spot has been there."

[5] The court also concluded that the Montgomery County Department of Transportation lacked the capacity to be sued and later entered an order dismissing the Department with prejudice. The Zilichikhises have not challenged that ruling.

By statute, a party generally may appeal only from a final judgment entered in a civil case. *See* Md. Code (1974, 2013 Repl. Vol.), § 12-301 of the Courts and Judicial Proceedings Article. One of the necessary elements of a final judgment is that the order must adjudicate or complete the adjudication of all claims against all parties. *See*, *e.g.*, *Waterkeeper Alliance, Inc. v. Maryland Dep't of Agric.*, 439 Md. 262, 278 (2014) (quoting *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41 (1989)). Because the absence of a final judgment may deprive a court of appellate jurisdiction, we can raise the issue of finality on our own motion. *See Waterkeeper*, 439 Md. at 276 n.11.

An order that adjudicates the rights of fewer than all of the parties, including rights under cross-claims or third-party claims, is not an appealable final judgment. *See* Md. Rule 2-602(a); *see also Estep v. Georgetown Leather Design*, 320 Md. 277, 286-87 (1990) (dismissing appeal where court had decided plaintiff's claims against defendant, but had not decided defendant's third-party claim against third-party defendant). If the court has not adjudicated a defendant's cross-claims or third-party claims, the judgment is not final, and is not appealable, even if those claims have become "groundless" because of the entry of judgment against the plaintiff. *Estep*, 320 Md. at 286. Until the circuit court has properly disposed of all claims "in existence" in the case, it has not entered a

final, appealable judgment. *See id.* at 287.[6]

Nonetheless, in one narrow exception to the final judgment rule, a court may direct "the entry of a final judgment . . . as to one or more but fewer than all of the claims or parties" if it "expressly determines in a written order that there is no just reason for delay." Md. Rule 2-602(b). Similarly, if a party has filed a notice of appeal before the entry of final judgment, but the trial court would have had discretion to enter a judgment under Rule 2-602(b), this Court may have discretion to enter a final judgment on its own initiative. *See* Md. Rule 8-602(e)(1)(C).[7]

In the instant case, the court did not enter an appealable final judgment, because it never formally adjudicated the cross-claims that Colossal Contractors and Penn Parking had asserted. *See Estep*, 320 Md. at 286-87. Nevertheless, had any of the parties requested the entry of judgment under Rule 2-602(b), the circuit court could reasonably have concluded that it had no just reason to delay the entry of a final judgment as to the

---

[6] For an extensive discussion of the mechanism for properly disposing of claims, including the requirements of a separate document reflecting the judgment and an accurate public record of the judgment in the court's docket, see *Hiob v. Progressive American Insurance Co.*, 440 Md. 466 (2014).

[7] Before exercising its discretion to invoke the savings provision of Rule 8-602(e), the appellate court must determine that the trial court could have directed the entry of a final judgment not disposing of the entire action. *See Doe v. Sovereign Grace Ministries, Inc.*, 217 Md. App. 650, 664, *cert. denied*, 440 Md. 116 (2014). Our discretion to enter a final judgment pursuant to Rule 8-602(e)(1)(C) is no broader than that of the circuit court under Rule 2-602(b). For instance, this Court does not have power to enter a final judgment if a trial court had discretion to certify a judgment but the trial court expressly refused to do so. *See Addison v. Lochearn Nursing Home, LLC*, 411 Md. 251, 264 (2009) (citing *Brown & Williamson Tobacco Corp. v. Gress*, 378 Md. 667, 682 (2003)).

Zilichikhises alone – *i.e.*, that it had no just reason to delay the entry of final judgment "as to one or more but fewer than all of the . . . parties." Md. Rule 2-602(b)(1). Otherwise, the appeal could not proceed until Penn Parking and Colossal Contractors had somehow resolved their cross-claims, which would be difficult for them to do without prejudicing their rights.

For example, if Penn Parking and Colossal Contractors had attempted to resolve the cross-claims by dismissing them *with prejudice*, they risked losing the ability to reassert the cross-claims against one another in case an appellate court reversed the entry of summary judgment against the Zilichikhises on appeal. On the other hand, if Penn Parking and Colossal Contractors had attempted to resolve the cross-claims by dismissing them *without prejudice*, with the express or implicit understanding that they could reassert the cross-claims if an appellate court reversed the entry of summary judgment against the Zilichikhises, they might leave themselves open to an argument that the appeal should be dismissed because they had improperly circumvented the final judgment rule. *See Miller & Smith at Quercus, LLC v. Casey PMN, LLC*, 412 Md. 230, 252-53 (2010). Furthermore, if the cross-claims included contractual claims for indemnification of defense costs as well as damages, it might be impossible to liquidate the claims and to quantify the full extent of a party's liability until the appeal had been concluded. Indeed, if the appellate court had reversed the entry of summary judgment, it might be impossible to liquidate those cross-claims until after further proceedings had occurred on remand and

on a subsequent appeal.

In analogous circumstances, where the circuit court entered summary judgment against the plaintiff, but did not dispose of a third-party claim against a third-party defendant, the Court of Appeals exercised its discretion under Rule 8-602(e)(1)(C) to entertain the appeal. *See Shofer v. Stuart Hack Co.*, 324 Md. 92, 98 (1991); *see also Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 204 (3d Cir. 2006) (holding, under analogous federal rule, that district court did not abuse discretion in certifying summary judgment order as partial final judgment, where there were unresolved claims, including cross-claim for indemnity, and appellate determination on underlying action could moot "derivative" indemnity claim). Here, too, because the circuit court could have exercised its discretion under Rule 2-602(b) to enter a final judgment as to the Zilichikhises, we hereby enter a final judgment as to the Zilichikhises, but not as to the unadjudicated cross-claims asserted by Colossal Contractors and Penn Parking. *See Shofer*, 324 Md. at 98.

## QUESTIONS PRESENTED

The Zilichikhises contend that the circuit court made a number of errors in granting summary judgment. Their brief raises several issues and sub-issues, which we have consolidated and restated in this form:

I.     Did the circuit court err in determining that it was undisputed that Dr. Zilichikhis's fall occurred in a parking space, rather than a pedestrian walkway?

-14-

II.      Did the circuit court err in ruling that certain photographs and an expert opinion based on those photographs were not admissible?

III.    Did the circuit court err in concluding that the Zilichikhises produced no evidence sufficient to show that the defendants had constructive knowledge of the slip-and-fall hazard?

IV.    Did the circuit court err in concluding that Montgomery County possessed governmental immunity with respect to the parking garage?[8]

As explained in this opinion, the court did not err. The Zilichikhises attempt to

[8] The issues presented in the appellants' brief are:

A.    Whether the trial court erred by resolving genuine disputes of material fact on summary judgment

B.    Whether the trial court erred by granting the county governmental immunity despite the county deriving significant revenue and profit from the operation of the Bethesda Parking Lot District

C.    Whether the trial court erred by finding, as a matter of law, that Parking Garage 49 is not a public way despite its consistent use for that purpose by members of the public

D.    Whether the trial court erred by finding that appellants failed to present a genuine dispute of material fact on the issue of appellees' actual and/or constructive notice of the slip-and-fall hazard

E.    Whether the combination of Garage 49's perpetual dangerous condition and Penn Parking's failure to perform contractually-mandated daily inspections of constitutes constructive notice of the subject hazard

F.    Whether Maryland should adopt a limited "mode-of-operation" rule for slip-and-fall cases where the subject hazard is recurring and foreseeable

generate factual disputes by relying on submissions that the circuit court, for various reasons, could not have considered as part of the summary judgment ruling: interrogatory answers that were not made under oath on the basis of the personal knowledge of a competent witness, photographs of a location that was never identified by a witness with personal knowledge of the specific site of the accident, an expert opinion based on those photographs, and one page from a Montgomery County budget document that was first submitted to the court on reconsideration. None of these submissions were sufficient to generate a genuine dispute of material fact on the issues of constructive knowledge and governmental immunity.

## DISCUSSION

When a party moves for summary judgment, the court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(f).

The issue of whether a trial court properly granted summary judgment is a question of law. *Butler v. S & S P'ship*, 435 Md. 635, 665 (2013) (citation omitted). In an appeal from the grant of summary judgment, this Court conducts a *de novo* review to determine whether the circuit court's conclusions were legally correct. *See D'Aoust v. Diamond*, 424 Md. 549, 574 (2012). The relevant inquiry is well known:

> When reviewing a grant of summary judgment, we determine
> whether the parties properly generated a dispute of material

> fact and, if not, whether the moving party is entitled to judgment as a matter of law. This Court considers the record in the light most favorable to the nonmoving party and construe[s] any reasonable inferences that may be drawn from the facts against the moving party. A plaintiff's claim must be supported by more than a scintilla of evidence[,] as there must be evidence upon which [a] jury could reasonably find for the plaintiff.

*Blackburn Ltd. P'ship v. Paul*, 438 Md. 100, 107-08 (2014) (citations and quotation marks omitted).

"Before turning to the questions of law, we must first decide whether the [c]ircuit [c]ourt properly determined that no genuine dispute of material fact exists." *O'Connor v. Baltimore Cnty.*, 382 Md. 102, 110-11 (2004). In this appeal, the Zilichikhises assert that the record reflects factual disputes regarding the location of the accident, whether the oil spill existed for a significant period of time before the accident, and whether the County generates profit from the operation of the garage. In considering each of these arguments, we are mindful of the requirement that, "[t]o properly oppose a motion for summary judgment, the facts presented must not only be detailed but also admissible in evidence." *O'Connor*, 382 Md. at 111 (citing *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 737 (1993)); *see Hamilton v. Kirson*, 439 Md. 501, 521 n.11 (2014) ("'in order to pass muster at a summary judgment proceeding, the opponent must produce evidence that would be admissible at trial'") (citation omitted).

## I. Absence of Factual Dispute Regarding Location of Accident

The Zilichikhises' first contention is that the court improperly resolved a disputed

factual issue when "the trial court found that Dr. Zilichikhis fell in a parking spot, as opposed to on a walking path within the garage."  This purported "dispute" centers on conflicting descriptions of the accident that the Zilichikhises provided at different times. The Zilichikhises argue that the court erred by accepting their deposition testimony that Dr. Zilichikhis fell in a parking spot, because an interrogatory answer indicated that his fall occurred on a painted walkway adjacent to a parking spot.[9]

In the Zilichikhises' view, the location of the motor oil spill was material both to the defendants' constructive knowledge of the hazard and the County's governmental immunity.  They theorize that, from the mere existence of an oil spill within a walkway, the jury could infer that patrons would have reported it immediately.  They also theorize that the County enjoys no immunity for the maintenance of pedestrian walkways through a public garage.  Their arguments fail because they had no admissible evidence that Dr. Zilichikhis fell anywhere other than in a parking spot.

At his deposition, Dr. Zilichikhis testified that he was "relatively close" to his car, about "ten meters" from the vehicle, when he fell in the parking garage.  When asked whether he was walking in a parking spot when he fell, Dr. Zilichikhis answered, yes.  He

_____

[9] The interrogatory answers were attached to the motion from Colossal Contractors, but the Zilichikhises did not rely upon the interrogatory answers in arguing before the circuit court that Dr. Zilichikhis fell in a walkway.  We will address the issue anyway to explain why the result would be the same even if this issue had been properly preserved.  *See Beyer v. Morgan State Univ.*, 139 Md. App. 609, 636 (2001), *aff'd*, 369 Md. 335 (2002).

added that his wife arrived five minutes later, but he could not remember whether he showed her the area where he fell.

In her deposition, Mrs. Zilichikhis testified that, when she arrived at the car, her husband pointed to the area in which he had fallen, between a railing and the driver's side door of the car. When asked whether her husband told her that "he fell in the parking space," she too answered in the affirmative. Mrs. Zilichikhis specifically denied that the area "had hatched painted lines on the floor of the garage" like those that appear in the photographs that her daughter later took.[10]

Nearly six months before those depositions, the Zilichikhises submitted answers to interrogatories from Colossal Contractors. One interrogatory asked Dr. Zilichikhis to provide a concise statement of the slip-and-fall incident. The answer included this statement:

> Plaintiff utilized the designated walking paths (which are bounded by support railings) from the elevators towards his vehicle. When Plaintiff reached the opening in the support railings, he stepped onto the parking surface to walk the few feet to the driver's side front door of his vehicle, which was parked directly adjacent to a walking path which was painted with yellow diagonal lines.
>
> As Plaintiff approached the driver's side front door of his vehicle on the walking path, he slipped on a wet, greasy

---

[10] None of the parties have discussed the evidentiary basis for admitting Mrs. Zilichikhis's hearsay statements about what her husband said to her about where he fell. If the Zilichikhises could lay a proper foundation, Dr. Zilichikhis's statements to his wife would arguably be admissible under the hearsay exception for excited utterances. *See* Md. Rule 5-803(b)(2).

substance (later determined to be both water and motor oil) he
had not seen and of which he was unaware. . . .

The Zilichikhises now argue that this interrogatory answer provides a basis to

conclude that Dr. Zilichikhis fell on a walking path. They contend that the court was

required to consider the answers to interrogatories as part of the record, because Colossal

Contractors attached the interrogatory answers to its motion. For several reasons, we

conclude that these answers were defective and, consequently, insufficient to create any

genuine dispute of material fact.

In determining the existence of a factual dispute, "[i]nitially, we need to determine

the record that may properly be considered on this summary judgment motion."

*Imbraguglio v. Great Atl. & Pac. Tea Co., Inc.*, 358 Md. 194, 201 (2000). Maryland Rule

2-501 sets forth certain requirements for a party's response to a summary judgment

motion:

> **(b) Response.** A response to a written motion for summary
> judgment shall be in writing and shall (1) identify with particularity
> each material fact as to which it is contended that there is a genuine
> dispute and (2) as to each such fact, identify and attach the relevant
> portion of the specific document, discovery response, transcript of
> testimony (by page and line), or other statement under oath that
> demonstrates the dispute. A response asserting the existence of a
> material fact or controverting any fact contained in the record shall
> be supported by an affidavit or other written statement under oath.
>
> **(c) Form of Affidavit.** An affidavit supporting or opposing a
> motion for summary judgment shall be made upon personal
> knowledge, shall set forth such facts as would be admissible
> in evidence, and shall show affirmatively that the affiant is
> competent to testify to the matters stated in the affidavit.

The party opposing the motion for summary judgment must demonstrate the existence of a genuine dispute as to a material fact "'*by producing factual assertions, under oath*, based on the *personal knowledge* of the one swearing out an affidavit, giving a deposition, or answering interrogatories.'" *Reiter v. ACandS, Inc.*, 179 Md. App. 645, 660 (2008), *aff'd sub nom. Reiter v. Pneumo Abex, LLC*, 417 Md. 57 (2010) (quoting *Miller v. Ratner*, 114 Md. App. 18, 27 (1997)) (emphasis from *Miller*). For this reason, a party's interrogatory answers are insufficient to generate a genuine issue of fact if those answers are "made 'to the best of [the witness's] information, knowledge and belief,' rather than on the basis of personal knowledge." *104 W. Washington St. II Corp. v. City of Hagerstown*, 173 Md. App. 553, 573 (2007) (citing *Fletcher v. Flournoy*, 198 Md. 53, 58 (1951)); *see also Lowman v. Consol. Rail Corp.*, 68 Md. App. 64, 73-74 (1986).

The interrogatory answers at issue were accompanied by the following affirmation:

> I hereby affirm under the penalties of perjury that the facts
> contained in the foregoing responses are true and accurate to
> the best of my knowledge, information and belief.
>
> /signature/[11]
> RAFAIL ZILICHIKHIS
> By: Lubov Zilichikhis, Power of Attorney

On its face, this affirmation, on "knowledge, information and belief," does not generate a genuine issue of fact. *104 W. Washington St.*, 173 Md. App. at 573.

One interrogatory did ask that Dr. Zilichikhis provide the names of anyone with

---

[11] The actual signature is not legible.

"personal knowledge regarding the subject matter of any of the facts of allegations." The answer stated: "Plaintiff, Rafail Zilichikhis, whose knowledge is disclosed throughout these responses." Still, even if we generously construe the answer describing the fall as a statement based on Dr. Zilichikhis's personal knowledge (rather than on his "knowledge, information, and belief," as indicated by the affirmation at the end of the document), the fact remains that Dr. Zilichikhis himself did not affirm that his answers were true. The signature line indicates that Mrs. Zilichikhis signed the affirmation on his behalf, acting through a power of attorney. Because Dr. Zilichikhis did not personally affirm the accuracy of his answers, the document is not sufficient to generate any genuine issues of material fact. *See Cottman v. Cottman*, 56 Md. App. 413, 430 (1983) (holding that factual assertions contained in answers to interrogatories did not create genuine issues of fact, because the answers were made by party's attorney without party herself swearing to the accuracy of the statements).

In addition, to defeat a properly-supported motion for summary judgment, a sworn written statement should include language to verify that the witness is competent to testify. *See Halliday v. Sturm, Ruger & Co., Inc.*, 138 Md. App. 136, 153 (2001), *aff'd*, 368 Md. 186 (2002); *see also Webb v. Joyce Real Estate, Inc.*, 108 Md. App. 512, 520 (1996) (quoting *A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 333 Md. 245, 263 (1994)); *see also Reeves v. Howar*, 244 Md. 83, 89 (1966) (holding that affidavit was insufficient to defeat summary judgment where affiant averred that he was "confident,"

rather than "competent," to testify).  Here, however, the interrogatory answers included

no affirmative statement that Dr. Zilichikhis was competent to testify to the facts

described in the answers.  If anything, the document indicated that Dr. Zilichikhis was not

competent to testify, because Mrs. Zilichikhis signed the statement for him, purportedly

under her power of attorney.  Indeed, the Zilichikhises created even graver doubts about

Dr. Zilichikhis's competence at the hearing, by referring to his "diminished capacity" and

submitting that "he is not competent to testify always" and no longer "competent to testify

as to [certain] things."[12]

In sum, the answers to interrogatories did not affirmatively show that Dr.

Zilichikhis made the statements under oath on the basis of personal knowledge or that he

was competent to testify to those matters.  Without compliance with those basic

evidentiary rules, the Zilichikhises could not establish that, if called as a witness at trial,

Dr. Zilichikhis would testify to the same facts set forth in the interrogatory answers.  *See*

*Imbraguglio*, 358 Md. at 207.  Moreover, Mrs. Zilichikhis cannot affirm that the answers

accurately reflect her husband's personal knowledge any more than she could testify in

court as to what her husband personally observed.  In these circumstances, the circuit

court did not err when it disregarded the interrogatory answers in its summary judgment

---

[12] When the court asked how the Zilichikhises intended to make their case, counsel
stated: "We can put him on the stand and then have Mrs. Zilichikhis testify as to whether
or not that is what . . . she was told directly after the fall."  The Zilichikhises appear not to
have considered whether or how Mrs. Zilichikhis could testify about what her husband
told her.  *See supra* n. 9.

ruling.

The only remaining evidence regarding the location of the accident, the sworn deposition from Dr. Zilichikhis and Mrs. Zilichikhis, established without contradiction that the fall occurred in a parking space within the garage. In the absence of any competent evidence to the contrary, the court was correct when it stated that it was "undisputed that [Dr. Zilichikhis] walked across a parking space" when he fell.

## II.     Inadmissibility of Photographs and Expert Opinion Testimony

As previously stated, in supplemental responses in opposition to summary judgment, the Zilichikhises submitted a set of photographs that depicted several dark stains on a concrete surface of a garage. In an accompanying affidavit, Ms. Lotvin, one of the Zilichikhises' daughters, stated that she took the photographs on the evening of June 22, 2011, when she "visited the area where [her] father fell . . . approximately eight hours after [her] father fell." Although she did not disclose how she had acquired personal knowledge of the precise location where her father fell or of how it looked at the time of the fall, Ms. Lotvin asserted that the photographs "fairly and accurately depict the scene of [her] father's fall at the time the photographs were taken." Based on his review of the photographs, the Zilichikhises' expert submitted an affidavit stating that the stains were from motor oil that had been on the floor "for a significant period of time, very likely longer than 36-48 hours[.]"

In this appeal, the Zilichikhises contend that these submissions are evidence that

the motor oil spill was present in the garage for about 28 to 40 hours before it caused Dr. Zilichikhis to slip and fall. They further argue that the court improperly resolved factual issues when it "offered its own critique of the photographs." The Zilichikhises, however, have failed to address a litany of comments made by the trial court regarding the lack of foundation for admission the photographs.

At the hearing, the court asked the Zilichikhises' attorney to point out "in any deposition where any witness identified any of these [photographs]." Counsel responded that the photographs had not been "available" during the depositions even though they purportedly had been taken by Ms. Lotvin on the evening of the accident. The court ultimately reasoned that Dr. Zilichikhis was "the only one [who] can [identify the spot] under the facts and circumstances of this case."

Colossal Contractors contends that the photographs were inadmissible because the Zilichikhises had no testimony to establish that the area depicted in the photographs was actually the site of the accident. Colossal Contractors argues: "Ms. Lotvin's testimony that these photographs fairly and accurately show the condition of the garage floor eight hours after her father's fall does not establish the condition of the floor at the time of her father's fall."

We agree that a photograph "'can be made part of the motion [for summary judgment] only through affidavit, deposition, or answers to interrogatories that adequately lay the proper foundation for the document's admission into evidence.'" *Imbraguglio*,

358 Md. at 203-04 (quoting Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 332 (2d ed. 1992)); *cf. Halliday*, 138 Md. App. at 153 (noting that party did not lay proper foundation for photograph submitted in support of summary judgment motion, but holding that objection to admissibility was not preserved).

The Zilichikhises have never adequately explained the basis for their assertion that these photographs "depict the scene of Dr. Zilichikhis' fall." Ms. Lotvin's affidavit merely stated, in a conclusory fashion, that the photographs depict "the area where [her] father fell." Yet, by her own admission, she was not present at the time of the fall. Her affidavit included no explanation of how she could identify the exact location of the fall eight hours later. Whether at the summary judgment hearing, in their motion for reconsideration, in their appellate brief, or in their reply brief, the Zilichikhises still have offered no explanation for Ms. Lotvin's personal knowledge of the location of the fall.

In their reply brief, however, the Zilichikhises do suggest one basis for admitting the photographs into evidence. Instead of attempting to explain Ms. Lotvin's knowledge of the location of the fall, the Zilichikhises rely entirely on Dr. Zilichikhis's interrogatory answer, which indicated that the accident occurred near a parking spot directly adjacent to a walking path painted with yellow diagonal lines. They argue, "[t]he photographs depict the exact scene described in Dr. Zilichikhis's interrogatory response, the walking path on which Dr. Zilichikhis fell, and the substance on which Dr. Zilichikhis fell and its location." As explained previously, however, substantive defects in these interrogatory

answers made that document inadequate in opposing the summary judgment motions. Consequently, the Zilichikhises did not introduce any admissible evidence to support a finding that the photographs depicted the site of the fall.[13]

Because the Zilichikhises did not establish a proper foundation for admitting the photographs as evidence of the location of Dr. Zilichikhis's fall, they also failed to establish a foundation for expert opinion testimony about what is depicted in those photographs. Generally, an expert's opinion has no probative force unless there is a legally sufficient factual basis upon which to support the conclusions. *See Carter v. Shoppers Food Warehouse MD Corp.*, 126 Md. App. 147, 155-59 & n.9 (1999) (holding that, before granting summary judgment, circuit court did not err in excluding safety expert's opinion about tripping hazard, where expert's investigation was limited to testimony of an interested party and cursory examination of site long after accident).

An expert's opinion is irrelevant, and thus inadmissible, if the opinion pertains to facts not in evidence. *See Attorney Grievance Comm'n v. Johnson*, 409 Md. 470, 504 (2009); *Hartless v. State*, 327 Md. 558, 580-81 (1992) (citing *Waltermeyer v. State*, 60

---

[13] In a reply brief, the Zilichikhises now assert that the circuit court in fact never ruled that the photographs were inadmissible but instead the court "discredited" their photographic evidence. They refer to the judge's comment that the photographs "don't impress the court." Immediately after that remark, however, the judge asked the Zilichikhises to explain how they expected "to get that testimony in." In light of the court's emphatic ruling that "[t]here is not even any evidence that this oil spot is the spot that we're talking about[,]" we reject their argument that the court considered the photographs to be admissible.

Md. App. 69, 80 (1984) (holding that trial court did not err in excluding expert's opinion about individual's state of mind where opinion was based on assumptions that were not borne out by other facts in evidence)); *see also* Md. Rule 5-104(b) ("[w]hen the relevance of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding by the trier of fact that the condition has been fulfilled"). Accordingly, even assuming that the safety expert could opine that the substance shown in the photographs was motor oil that had been on the floor for some time, the factfinder would still have no adequate basis to conclude that the photographs depicted the site of Dr. Zilichikhis's fall.[14]

In summary, neither the photographs nor the expert opinion based on those photographs was part of the record that was properly considered on summary judgment. The court, therefore, did not err in declining to consider the photographs and the expert testimony based thereon.

### III. Insufficient Evidence of Constructive Knowledge

Having determined that there were no genuine disputes of material fact, we now turn to the question of whether the moving parties were entitled to judgment as a matter

---

[14] The Zilichikhises complain that the circuit court "disregarded Dr. Andrews' testimony *sua sponte*." Contrary to this contention, the County promptly raised the issue of the admissibility of the expert testimony at the first opportunity to do so, in a reply to the Zilichikhises' supplemental opposition. Moreover, the court may make legal determinations on the admissibility of expert testimony as part of a ruling on a summary judgment motion, even without the need for a separate motion in limine. *E.g. Hamilton v. Kirson*, 439 Md. 501, 521 n.11 (2014).

of law.

"Summary judgment is appropriate if the nonmoving party has failed to make a sufficient showing of an essential element of [its] case with respect to which [it] has the burden of proof." *Cent. Truck Ctr., Inc. v. Cent. GMC, Inc.*, 194 Md. App. 375, 386 (2010) (citations and internal quotation marks omitted). "Any theory of liability sounding in negligence is predicated on the existence of the following elements: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *Warr v. JMGM Group, LLC*, 433 Md. 170, 181 (2013) (quoting *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999)). The circuit court here concluded that, even assuming that each of the defendants owed a duty to Dr. Zilichikhis, the summary judgment record did not show that any of the defendants breached their respective duties to him.

Generally, to sustain a cause of action in a premises liability case, the plaintiff "must prove not only that a dangerous condition existed but also that the [defendants] 'had actual or constructive knowledge of the dangerous condition and that the knowledge was gained in sufficient time to give [them] the opportunity to remove it or to warn the [plaintiff].'" *Joseph v. Bozzuto Mgmt. Co.*, 173 Md. App. 305, 315 (2007) (quoting *Rehn v. Westfield America*, 153 Md. App. 586, 593 (2003), *cert. denied*, 380 Md. 619 (2004)). When a customer alleges that a business proprietor breached a duty of care, "'[t]he burden

is upon the customer to show that the proprietor . . . had actual or constructive knowledge' that the dangerous condition existed." *Rehn*, 153 Md. App. at 593 (quoting *Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 232 (1965)). "In terms of constructive knowledge, moreover it is necessary for the plaintiff to show how long the dangerous condition has existed." *Joseph*, 173 Md. App. at 316.

For this reason, an entity charged with failing to maintain premises in a reasonably safe condition is entitled to summary judgment in its favor if it neither created nor actually knew of the hazard, and if there is no evidence showing that the hazardous condition existed long enough for that party to remedy the hazard or warn of its existence. *See Joseph*, 173 Md. App. 315-19 (property owner and manager entitled to summary judgment where plaintiff slipped and fell on oily substance on stairs of apartment building, where plaintiff produced no evidence showing how long substance was on stairs); *Rehn*, 153 Md. App. at 599-600 (companies in charge of maintaining and performing cleaning services for mall food court entitled to summary judgment where only evidence regarding amount of time spill was on floor was restaurant employee's testimony that it was less than four minutes).

On its own, the testimony that Dr. Zilichikhis slipped and fell on a spot of motor oil inside a parking garage does not generate an issue of fact as to a defendant's negligence. *See Lexington Market Auth. v. Zappala*, 233 Md. 444, 445-46 (1964). The plaintiff in that case testified that she slipped and fell on a spot of oil or grease in a

-30-

self-service parking garage, but that she did not see any oil when she first parked in the space or when she returned less than two hours later and attempted to enter the vehicle from the passenger side. *Id.* at 445-46. The Court held that this evidence was insufficient to show that the proprietor had actual or constructive knowledge of the oil spill:

> For all we know, the oil or grease may have leaked from a car occupying the space beside her car, only a few moments before she returned. . . . It may well be that a garage keeper should anticipate that oil or grease may occasionally leak from parked cars, but he is not an insurer and we think it would be unreasonable to hold that it is his duty to continuously inspect and sand down any and all leakage as soon as it occurs, even if we assume that periodic inspections are necessary.

*Id.* at 446.

In their initial response to the summary judgment motion, the Zilichikhises contended that Maryland law did not require them to produce any evidence that the motor oil spill had existed for any length of time before Dr. Zilichikhis's fall. With their supplemental responses, they made a belated attempt to submit the expert's opinion that, based on the photographs, a spill had been present for up to 40 hours before the fall. As previously explained, however, the Zilichikhises did not present the photographs or the opinion derived from those photographs in an admissible form.

The only other testimony concerning the duration of the oil spill came from Dr. Zilichikhis's deposition, in which he stated that the oil appeared to be "fresh." He further testified: "There is no way for me to know when that oil got there." This testimony is

-31-

plainly insufficient to make out a case of constructive knowledge. *See Joseph*, 173 Md. App. at 318 (emphasizing that appellant's testimony that appellant had no idea how long greasy substance was on floor before appellant's slip and fall "shed no light . . . on any actual or constructive knowledge"); *see also Zappala*, 233 Md. at 445-46 (stating that, "[f]or all we know, the oil or grease may have leaked from a car occupying the space beside her car, only a few moments before she returned").

Instead of the requisite evidence that the defendants had actual or constructive notice of the spill at the specific place where Dr. Zilichikhis fell, the Zilichikhises attempt to rely on other contentions. Pointing to deposition testimony and affidavits from residents, they argue: "Appellants offered evidence that Garage 49 was 'perpetually dirty' with 'many oil stains, slicks, and puddles throughout' . . . and that Penn [Parking] failed to perform mandatory daily inspections of Garage 49 to locate hazards[.]" Neither type of evidence, however, is sufficient to show that any of the defendants had constructive knowledge of the motor oil spill that caused Dr. Zilichikhis's fall.

On the issue of inspections, the Zilichikhises invoke dicta from *Smith v. City of Baltimore*, 156 Md. App. 377, 384 (2004), in which this Court quoted *Keen v. City of Havre de Grace*, 93 Md. 34, 39 (1901), for the proposition that landowners "'cannot fold their arms and shut their eyes and say they have no notice.'" From that language, the Zilichikhises would extract a duty to use due care in inspecting for dangerous conditions, as well as an inference of constructive notice if the owner did not discover such a

condition.

Smith, however, specifically rejected that proposition. Referring to Keen's warning that landowners cannot fold their arms and close their eyes, this Court stated:

> This language cannot be read out of context; and when read in context does not impose a duty on municipalities to conduct regular inspections of their roadways. Rather, the language explains the circumstances in which municipalities will be found to be on constructive notice of defects in their roadways, and the rationale underlying the concept of constructive notice.

Smith, 156 Md. App. at 385.

Neither Keen nor Smith permits an inference of constructive notice merely because an owner allegedly fails to use due care in inspecting for dangerous conditions. In Keen the Court of Appeals identified a jury question of constructive notice when the plaintiff tripped and fell in a dangerous hole in a sidewalk that had been there for as much as three weeks, Keen, 93 Md. at 40, a sufficient amount of time for a jury to infer that the city had become aware of the hole. By contrast, in Smith, this Court affirmed the entry of summary judgment against plaintiffs who conceded that they had no direct evidence as to how or when the defect had arisen. Smith, 156 Md. App. at 385. In reaching its decision, the Smith Court rejected the proposition that the City was "deemed" to have constructive knowledge of dangerous conditions because of an alleged failure to conduct routine

inspections.  *Id.* at 386.[15]

One year after *Smith*, this Court again rejected the proposition that a jury can infer constructive notice from an alleged failure to conduct reasonable inspections.  *Maans v. Giant of Maryland, L.L.C.*, 161 Md. App. 620, *cert. denied*, 388 Md. 98 (2005).  In that case, Ms. Maans slipped on liquid spilled near the checkout line of a grocery store.  *Id.* at 623-24.  Lacking evidence of the duration of the spill, Maans argued that the store had constructive knowledge of the slippery condition, because the store could not show when the area had been last inspected; the store did not specifically assign an employee to look for spills; Maans fell near a cashier's work station; and the cashier had never been told to watch for hazards near her register.  *Id.* at 630.  In other words, Maans contended that constructive knowledge "may be proven by introduction of evidence that, prior to the accident, [a] defendant failed to make reasonable inspection of the premises."  *Id.* at 632.

This Court disagreed.  We explained that, even assuming that Giant had failed to make reasonable inspections, Maans still "failed to produce any evidence that had Giant made reasonable inspections prior to the accident it would have discovered the water on the floor in time to prevent the accident."  *Id.* at 632.  Echoing the reasoning of *Zappala*,

---

[15] *Smith* suggested that a jury might infer constructive notice if a defect was "such that one reasonably could infer from its mere existence that citizens would have immediately reported it to the City authorities."  *Smith*, 156 Md. App. at 386.  The Court gave no examples of such defects, but they certainly would not include oil spills in municipal garages, which, as often as not, may be beneath parked cars and concealed from view.  *See Zappala*, 233 Md. at 446.

we commented: "For all that was shown by appellant, the water could have been spilled by a customer seconds before her fall." *Id.* The same is true as to the oil in this case.

As an alternative position, Maans urged this Court to reject the requirement that a business proprietor have actual or constructive pre-injury notice of a defect, and instead adopt a "mode-of-operation" rule. *Maans*, 161 Md. App. at 636-37 (collecting cases). "Under the mode-of-operation rule, 'the plaintiff is not required to prove notice if the proprietor could reasonably anticipate that hazardous conditions would regularly arise,' based on the manner the owner/occupier regularly does business." *Id.* at 637 (citation omitted). This Court rejected the invitation to eliminate the requirement of actual or constructive knowledge:

> Doing away with the requirement that the invitee must prove how long the dangerous condition existed pre-injury is the functional equivalent of doing away with the requirement that the plaintiff prove that the defendant's negligence was the proximate cause of the plaintiff's injury. This case illustrates that point. Without "time on the floor" evidence, the storekeeper would be potentially liable even though there is no way of telling whether there was anything Giant could have done that would have avoided the injury.

*Maans*, 161 Md. App. at 640; *see also Joseph*, 173 Md. App. at 316-17.

Notwithstanding the Zilichikhises' argument that a handful of states other than the 21 states cited in *Maans* have since adopted the mode-of-operation rule in some form, we see no reason to abandon the reasoning of *Maans*.

## IV. <u>County's Governmental Immunity for Parking Garage</u>

Independent of the issue of constructive knowledge, the circuit court also concluded that Montgomery County was entitled to judgment on the ground that it possessed governmental immunity in its operation of the public parking garage. The circuit court reasoned that this Court's opinion in *Bagheri v. Montgomery County*, 180 Md. App. 93, *cert. denied*, 406 Md. 112 (2008), was directly on point. On the record in this case, we reach the same conclusion.

Under Maryland common law, a local government is immune from tort liability when it functions in a "governmental" capacity, but it enjoys no such immunity when it is engaged in activities that are "proprietary" or "private" in nature. *See Mitchell v. Hous. Auth. of Baltimore City*, 200 Md. App. 176, 186 (2011). "'[T]here is no universally accepted or all-inclusive test to determine whether a given act of a municipality is private or governmental in its nature, but the question is usually determined by the public policy recognized in the jurisdiction where it arises.'" *Rios v. Montgomery Cnty.*, 386 Md. 104, 128 (2005) (quoting *Mayor & City Council of Baltimore v. Blueford*, 173 Md. 267, 275-76 (1937)). Guidelines from the Court of Appeals establish that the activity of a local government is considered governmental in nature "'[w]here the act in question is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest[.]'" *Rios*, 386 Md. at 128-29 (quoting *Blueford*, 173 Md. at 276).

Applying that test in *Bagheri*, 180 Md. App. at 96-97, this Court held that Montgomery County enjoyed governmental immunity in connection with its operation of a parking garage in the Bethesda Parking Lot District. In that case, Ms. Bagheri alleged that she tripped and fell on an improperly maintained concrete floor within a parking garage in Bethesda owned and operated by Montgomery County. *Id.* at 95. We recited the following facts relevant to the immunity analysis:

> All funds collected from the operation of the garage are applied to the Bethesda Parking Lot District Fund and are used to pay principal and interest on any outstanding bonds issued to acquire, build, restore, or improve parking facilities within the parking District. Any balance remaining after such payments is used by the County to acquire, build, maintain or operate off-street parking facilities and to reimburse the County for the general revenues advanced to the parking District. In the event that a balance remains after all these payments, the County's Director of Finance must hold such surplus funds until the next fiscal year and then apply them in the same manner as current revenues are applied. The parking garage in question does not operate for profit nor was it designated to operate at a profit.

*Id.* at 95-96.[16]

In the instant case, Montgomery County supported its summary judgment motion with an affidavit from the Chief of the Division of Parking Management. The affidavit stated that Garage 49, like the other garages owned by the County, "does not operate for profit nor was it designated to operate at a profit." Citing section 60-16 of the

---

[16] Ms. Bagheri had agreed that it was undisputed that the County generated no profit from the parking garage in that case. *See Bagheri*, 180 Md. App. at 95 & n.1.

Montgomery County Code, the affiant explained that funds collected from Garage 49 are directed only toward off-street parking facilities in the Bethesda Parking Lot District or toward other transportation-related purposes, and that any surplus funds must be held and applied to subsequent fiscal years.

Notwithstanding that Garage 49 is created by the same legislative scheme at issue in *Bagheri*, the Zilichikhises assert that the County in fact generates millions of dollars in annual revenue through parking fees and fines and that the County regularly transfers large sums to the County's general fund. As the sole basis for their assertions, the Zilichikhises refer to one page from a budget document that, they say, evidences the total revenues and transfers from the Bethesda Parking Lot District since 2006.[17]

Whatever the materiality of the information in this budget document, the document itself never became part of the summary judgment record. Under Maryland Rule 2-501(b), the party opposing summary judgment has the responsibility in its written response to "identify with particularity each material fact as to which it is contended that there is a genuine dispute" and to specify the evidence that demonstrates the dispute. But although the Zilichikhises said that they received the budget document in discovery, they did not attach it to any of the several papers that they filed in opposition to the summary

---

[17] The Zilichikhises do not appear to appreciate that "revenues" are not the same as "profits."

judgment motions.[18]

It was only during the motions hearing that the Zilichikhises first disputed the factual assertion that the County generates no profit from the garage. Although the court allowed counsel to argue that the operation of the garage was a proprietary function, the transcript gives no indication that the court received or reviewed any additional exhibits before issuing its ruling. To the contrary, the Zilichikhises first submitted the budget document as an exhibit to a motion for reconsideration, and it has made its way into the appellate record only as an exhibit to that motion. The Zilichikhises have not argued that the court abused its discretion in declining to accept any exhibit during the hearing, nor have they argued that the court abused its discretion in denying their motion for reconsideration. Under the circumstances, the information concerning the parking district funds was not properly before the court at the time of summary judgment. *See Steinhoff v. Sommerfelt*, 144 Md. App. 463, 483-84 (2002) (explaining that appellant did not preserve contention first raised in a motion to alter or amend, where appellant also refused to specify whether appeal was taken from underlying judgment or from denial of motion to alter or amend).

Moreover, even if the Zilichikhises had attached the document to their opposition

_____

[18] The Zilichikhises had over a year to prepare to address the issue of governmental immunity. The Zilichikhises received notice that the County intended to rely on the defense of governmental immunity when the County first moved to dismiss the complaint on October 19, 2012; when the County filed an answer on March 12, 2013; and when the County moved for summary judgment on December 4, 2013.

to the summary judgment motion, they still failed to establish any foundation for the document's admission into evidence. The Zilichikhises point to no formal admissions, stipulations, deposition testimony, or affidavit showing the authenticity or relevance of the document. Attaching documents in connection with a motion for summary judgment "is no more acceptable than standing up in open court and attempting to offer the same documents into evidence without a witness or a stipulation." Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 355 (3d ed. 2003); *see Imbraguglio*, 358 Md. at 202-04 (holding that unsworn statement of witness attached to interrogatory answer was not properly part of summary judgment record in absence of supporting affidavit, even though statement was furnished during discovery); *Diffendal v. Kash & Karry Serv. Corp.*, 74 Md. App. 170, 181 (1988) (holding that transcript of conversation was not properly before court on summary judgment motion in absence of sworn statement from authenticating witness). Making only bare assertions that the "information was undisputed," the Zilichikhises suggest no possible basis for admitting the document into evidence.[19]

Consequently, the County's affidavit that the parking garage "does not operate for profit nor was it designated to operate at a profit" constituted the only evidence properly considered on that point. The record reflects no genuine factual dispute, and so we must

---

[19] For instance, the Zilichikhises have advanced no argument that the document was self-authenticating. *See generally* Md. Rule 5-902.

arrive at the same conclusion reached in *Bagheri*.

The Zilichikhises nonetheless raise a secondary argument, similar to an argument we rejected in *Bagheri*. Ms. Bagheri had contended that "the act of operating and maintaining a parking garage was a proprietary function because 'the site of the occurrence in the subject parking garage was an area of public travel' and therefore [Montgomery] County was not immune from suit." *Bagheri*, 180 Md. App. at 97-98. We reject the contention in this case, because the Zilichikhises did not even have any evidence that the fall occurred in an "area of public travel."

Under a longstanding rule of Maryland common law, a local municipality "is not immune from a negligence action arising out of its maintenance of its public streets and highways." *Higgins v. City of Rockville*, 86 Md. App. 670, 678, *cert. denied*, 323 Md. 309 (1991). Instead, "a municipality has a 'private proprietary obligation' to maintain its streets, as well as the sidewalks, footways and the areas contiguous to them, in a reasonably safe condition." *Id.* at 679 (citations omitted). Under this line of cases, "a municipality may be responsible for protecting individuals who are physically within the bounds of a public way from hazards caused by the governmental entity which come from outside the boundaries of the public way onto the public way that could have and should have been foreseen and prevented by the governmental agency." *Mayor & City Council of Baltimore v. Whalen*, 395 Md. 154, 167 (2006). For instance, in *Higgins*, we held that the City of Rockville was not immune from liability for injuries caused by a cable strung

across a driveway, where the driveway was used by vehicles and pedestrians as a "service access road" connecting a highway to athletic fields behind a school.  *See Higgins*, 86 Md. App. at 673-74, 685-86.

In *Bagheri*, 180 Md. App. at 100-02, we rejected an appellant's invitation to extend this immunity exception to include a public parking garage whose operation otherwise met the definition of a governmental function.  We noted that Ms. Bagheri's accident "occurred nowhere close to a driveway or access road[,]" and that she did not assert that the garage "constituted either a street, sidewalk, or a footway[,]" nor did she contend "that the accident occurred on a public way." *Id.* at 101.  Likening the parking garage to other areas of frequent pedestrian travel, *id.* at 101-02 (citing *Heffner v. Montgomery Cnty.*, 76 Md. App. 328 (1988) (courthouse lobby); *Burns v. Mayor & City Council of Rockville*, 71 Md. App. 293 (1987) (aisle of theater)), we reasoned that there was no justification "to greatly expand the 'street, sidewalk, footway' exception to the usual rule" of governmental immunity.  *Bagheri*, 180 Md. App. at 102.

The Zilichikhises' argument is only marginally less expansive than the contention that we rejected in *Bagheri*.  They rely on affidavits from two residents who stated that they frequently or occasionally used the garage as a walking route from the Metropolitan Apartments to nearby streets.  They compare this "walking route" to "a public way *through* a park, . . . [which] involves an exemption from [governmental] immunity." *Higgins*, 86 Md. App. at 685 (analyzing *Haley v. Mayor & City Council of Baltimore*, 211

-42-

Md. 269 (1956)).

Even assuming that a factfinder could conclude that the County had a proprietary obligation to maintain some hypothetical walking path through the parking garage, that conclusion would be immaterial unless the accident actually occurred on that path. *See Whalen*, 395 Md. at 167-68 (rejecting "the proposition that a governmental entity loses its immunity and is liable to a person who leaves a public way and while not in a public way, encounters a hazard in a public park"). As previously discussed, however, the only competent evidence in the summary judgment record indicated that Dr. Zilichikhis slipped and fell within a parking space on the ground level of Garage 49. The Zilichikhises had no admissible evidence to show that the parking space was located on a walking route used by other residents. We see no basis to conclude that a parking space is part of a "public way," simply because some citizens used unspecified areas of that same garage as a convenient route to exit an apartment building. This proposed expansion of a local government's duty to maintain its sidewalks and footways, to include all of the parking spaces within a public parking garage, would violate the basic contours of the governmental immunity doctrine. *See Bagheri*, 180 Md. App. at 102.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court. The Zilichikhises produced no admissible evidence that the accident occurred in a walkway, that the motor oil spill had existed for any period of time before the accident, or that the

County derived any profit from its operation of the garage. The circuit court did not err in concluding that there were no genuine disputes of material fact as to the issues of constructive knowledge and governmental immunity. The County, Colossal Contractors, and Penn Parking were entitled to judgment as a matter of law.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**